**Eugene Roosevelt POWERS and Lila Virginia Powers, Appellees,**

v.

**SIMS AND LEVIN, Appellant.**

**No. 75–1768.**

United States Court of Appeals, Fourth Circuit.

Argued Jan. 6, 1976.

Decided Oct. 1, 1976.

---

John W. Pearsall, Richmond, Va. (McCaul, Grigsby & Pearsall, Richmond, Va., on brief), for appellant.

Louis A. Sherman, Atty., Neighborhood Legal Aid Society, Inc., Richmond, Va. (John M. Levy, Richmond, Va., and Robert F. Flinn, Fairfax, Va., Attys., Neighborhood Legal Aid Society, Inc., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and WINTER and CRAVEN, Circuit Judges.

HAYNSWORTH, Chief Judge:

Under the Truth-in-Lending Act[1] and the regulations known as Regulation Z,[2] the plaintiffs, husband and wife, by this action sought the maximum civil penalties, rescission of the home improvement loan contract and vesting of the property constituting home improvements in them without further obligation on their part to repay any of the funds advanced to them or in their behalf. The district court granted summary judgment for the plaintiffs upon findings and conclusions that the defendant had violated the Act in four respects. It awarded the maximum civil penalty of $1,000 to each of the plaintiffs, declared their home improvement loan contract rescinded and title to the home improvements vested in the plaintiffs without further obligation of repayment. It also ordered the defendant to pay the plaintiffs' attorneys' fees in the amount of $1,500. *Powers v. Sims and Levin Realtors,* E.D.Va., 396 F.Supp. 12.

Upon a different ground, we think the Truth-in-Lending Act was violated, though we think the plaintiffs were entitled to only

1. 15 U.S.C. § 1601, *et seq.*

2. 12 C.F.R. § 226.1 *et seq.*

one civil penalty, not two. We take a different view of the matter of the rescission and vesting of the title of the home improvements in the plaintiffs.

The plaintiffs, desiring to effect improvements to their home at an estimated cost of $1250, negotiated a loan to themselves from the defendant for $5,000. The extra money was needed to repay a previous loan upon which a balance of $2,758.13 was then due to the First & Merchants National Bank and to pay delinquent fire insurance premiums and outstanding real estate taxes. Including $5.50, the fee for cancellation of the earlier mortgage, the total sum to be disbursed in satisfaction of outstanding debts of the Powers was $3,303.85.

As the first monthly installment, plaintiffs made a payment of $50, whereupon a dispute developed among the parties whether the monthly installments negotiated by the parties were to be $50 or $65. Meanwhile, the Powers had also become involved in a dispute with the contractor whom they had obtained to effect the improvements. This led them to seek legal advice.

Upon advice of counsel, Mr. Powers wrote to the defendant on September 20, 1974 giving notice of cancellation of the loan agreement upon the ground that neither he nor his wife had been furnished a disclosure statement as required by the Act. The defendant responded that its papers showed that the plaintiffs had been furnished the disclosure statement and rejected the attempted cancellation.[3] On October 1, 1974, Mr. Powers again wrote to the defendant offering to rescind the loan transaction and this time offering to return the property constituting the improvements. The defendant responded that it would not agree to a rescission unless plaintiffs returned the home improvements or their reasonable value and the amount which had been expended in satisfaction of the earlier debts. Alternatively, the defendant offered to recast the note and deed of trust to provide a longer period of repayment during which the monthly payments would be $50 rather than $65. These alternative proposals were rejected by the plaintiffs, who contended that they were not required to reimburse the defendant for the amount it had spent to discharge the earlier indebtedness.

This litigation followed.

There is an unresolved dispute as to whether the defendant furnished the plaintiffs with any disclosure statement, though the defendant produced a disclosure statement purportedly signed by the plaintiffs. The district court examined that statement and concluded that it violated the requirements of the Act in four respects:

1) It failed to identify the method of computing any unearned portion of the finance charge in the event of pre-payment of the obligation.[4]

2) It failed to print the terms "finance charge" and the "annual percentage

3. The language in the letter from the plaintiff was, "To date none of the disclosures required by the Truth-in-Lending Act have been given to me or my wife." It is clear that the defendant understood this to be an assertion that neither Mr. Powers nor Mrs. Powers had been given the papers required to be given them. That this was correct is confirmed by the complaint in which the first two deficiencies alleged are that the defendant failed (1) "to furnish each plaintiff with a duplicate of the instrument or a statement upon which the required disclosures are made . . ." and (2) "to furnish each plaintiff with two copies of the rescission notice . . ." The unresolved factual issue, clearly left open by court and counsel, was whether or not any papers had been given to the Powers at or before the closing.

Whether or not a borrower, when undertaking to rescind such a transaction must disclose his grounds, fairness strongly suggests that he should. When he does disclose a ground for which there is no factual basis, surely the lender may dispute it. If, as the defendant claims and the written acknowledgments indicate, Mr. and Mrs. Powers were furnished with copies of the papers, the lender was not bound to acquiesce in the attempted rescission, though, of course, this would not preclude a later effective rescission upon some other valid ground.

4. The disclosure statement provided that the "borrower should have the right of anticipation in whole or in part at any time with interest to be abated on the amount paid." Apparently it was not contemplated that any "finance charge" would be prepaid which, at the time of the payment, would be unearned.

rate" more conspicuously than other terms.[5]

3) It failed to clearly disclose the total number of payments for the repayment of the indebtedness.[6]

4) It failed to use the term "finance charge." [7]

We need not consider the correctness of any of these rulings, for there is another matter, noticed by the district court *sua sponte*,[8] which clearly supports a finding and conclusion of a violation of the disclosure requirements.

■ In any transaction in which a security interest is to be acquired in one's home, the Act requires that the debtor be given the right to rescind the transaction through "midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section . . ., whichever is later . . .." [9] The same section also requires the lender to give the debtor written notice of the right of rescission within the three business day period.

The Powers were notified of the right to rescind within two days, not three. The disclosure statement and the rescission notice indicate that delivery to the plaintiffs was on July 24, 1974. The rescission notice stated that they would have until July 26 to exercise the right of rescission. What the Powers might or might not have done is unknown, but the Act requires that they be given three days to think about it, and giving them only two is a clear violation of the Act's requirements. This violation of the Act supports the imposition of the stat-utory penalty and an award of attorneys' fees as provided in 15 U.S.C.A. § 1640.

■ The district court held that husband and wife were each entitled to the statutory penalty of $1,000.[10] Literally read, § 1640 does provide that when a creditor fails to disclose to any person any information required to be disclosed to that person, the creditor is liable to that person for the statutory penalty. In this home improvement loan to the husband and wife, subject to their right of rescission, the creditor was required to make disclosure to each of them. Thus the district court reasoned that each was entitled to $1,000 as the statutory penalty. But this neglects the fact that there was but one credit transaction, and the plaintiffs were joint obligors of that joint obligation. The Congress was careful to provide a maximum to the statutory penalty, and it is not to be lightly supposed that that statutory maximum is to be doubled, trebled, or quadrupled, depending upon the number of the joint obligors in a single consumer credit transaction. That we should treat husband and wife, when joint obligors, as one is indicated by the legislative history. In House Report Number 1040 it is stated:

> "Any creditor failing to disclose required information would be subject to a civil suit with a penalty equal to twice the amount of the finance charge, with a minimum penalty of $100 and a maximum penalty not to exceed $1,000 on *any individual credit transaction*." 1968 U.S. Code Cong. and Adm.News p. 1976 (Emphasis added).

---

5. Those terms were printed in all capital letters as were the components of the finance charge, the interest and the brokerage. So also was the heading "payments."

6. The paragraph under the caption "payments" provided for 59 monthly payments of $65 and a final "balloon payment" of $3,258.15. It did not state that the 59 monthly payments plus the one balloon payment would total 60 payments.

7. The term was used in the plural, "finance charges," and the interest and brokerage charge, components were separately stated, as was the total.

8. 396 F.Supp. 21 at 23, n. 14.

9. 15 U.S.C.A. § 1635(a). Reasons for the provision of a three day "cooling off period" are stated in *Gardner and North Roofing and Siding Corp. v. Board of Governors Federal Reserve System,* 150 U.S.App.D.C. 329, 464 F.2d 838.

10. The statutory penalty is twice the amount of the finance charge, but not less than $100 nor more than $1,000. The statutory maximum is applicable here.

Since there was here only one credit transaction, we think only one civil penalty should have been imposed. *See Rivers v. Century Finance Company,* 4 CCH Con. Credit Guide, ¶ 98,771 (N.D.Ga.1974); *St. Marie v. Southland Mobile Homes, Inc.,* 376 F.Supp. 996 (E.D.La.1974). *But see, Simmons v. American Budget Plan, Inc.,* 386 F.Supp. 194 (E.D.La.1974).

■ Under 15 U.S.C.A. § 1635 the debtors must be allowed a right of rescission within three business days following consummation of the transaction, or the delivery of the required disclosures, whichever is later. Since, as we have held, the borrowers were not given the necessary disclosure of the three day right of rescission, their right of rescission continued, but we find the attempt of the plaintiffs to rescind in September and October 1974 fatally deficient, amounting instead to an anticipatory breach of contract.

The Powers, in attempting to rescind the transaction, stated they would tender delivery of the home improvements, but that they would not reimburse the defendant for the money it had expended in satisfying the other indebtedness of the Powers.[11] In demanding such reimbursement, the defendant was not imposing unwarranted preconditions on the rescission right, as the district court held, but was simply pointing out a glaring deficiency in the proposal of the Powers and insisting upon what was its legal due.

At the time the transaction was consummated, the Powers owed the First & Merchants Bank $2,758.13. They also owed delinquent fire insurance premiums and real estate taxes. The debt to the Bank was secured by a valid first mortgage. Supposedly, the unpaid taxes were a lien on the property. With its funds, the defendant satisfied the plaintiffs' debt to the Bank and cancelled that mortgage. The plaintiffs are no longer obligated to pay $2,758.13 to the Bank, the accrued taxes to public officials or the delinquent premiums to the insurance company, and there is no equitable or legal principal which relieves them of the obligation to reimburse the defendant if the plaintiffs are permitted to rescind the transaction.

Section 1635 does not require a different result. Subsection (a) of that section simply provides for the right of rescission, while subsection (b) relieves the rescinding obligor of any need to pay any "finance or other charge." It does not relieve him of any other obligation or of a duty to proffer full restoration. Indeed, it is specifically provided that if the creditor has delivered any property to the obligor, the obligor must tender its return. The money paid to the Bank to discharge plaintiffs' indebtedness was delivered to the obligors as surely as if the defendant had delivered its check payable to the plaintiffs to them, and the plaintiffs, in turn, had endorsed it over to the Bank. Moreover, 12 C.F.R. § 226.903 provides that if there is a refinancing of an existing indebtedness the right of rescission applies only to the extent the amount of the new loan exceeds the amount of the old,

---

11. Were there nothing else in the case, the letter would be ambiguous. It said the Powers would tender the home improvements or their value. It said nothing of funds expended by the defendant in satisfaction of the prior mortgage and payment of the past due taxes and insurance premiums. The defendant read the letter to mean that reimbursement of such sums would not be tendered, and that was exactly what the letter was intended to say. This is shown implicitly by the plaintiffs' rejection of the offer to rescind if those monies were repaid and explicitly by the plaintiffs' answers to the defendant's Requests for Admission Nos. 4 and 9. ". . . (T)he plaintiffs did not intend and were unprepared to tender to defendant as part of their rescission any money they might owe on a prior mortgage which was not the subject of their rescission." ". . . The plaintiffs admit . . . that they did not intend and were not prepared to tender, as part of their rescission of the subject transaction, any amount owing on a prior mortgage or any taxes or insurance paid for by the defendant prior to giving notice of rescission."

The plaintiffs may not be heard to say that the defendant's reading of the letter of October 1 was unreasonable when they admit their intent coincided with the reading. Indeed, the plaintiffs take no such position. Theirs was simply the untenable legal position that they could rescind without obligation to make such a tender.

unless the refinancing creditor is not the existing creditor, in which latter event the entire new transaction is subject to rescission. This, of course, indicates that the amount of the old loan is to remain an outstanding obligation of the obligors and is subject to tender by the obligors to a new creditor after it has discharged the old obligation.

Upon the receipt of a valid notice of rescission, § 1635(b) requires the creditor to take the first steps within ten days of receipt of that notice.[12] Here the defendant, within the ten day period, if the notice was valid, would have been required to return the $50 payment it had received and cancel its security interest in the home. Thereupon, the plaintiffs would have been obligated to tender the home improvements, or their value, plus the amount of all funds expended by the defendant in discharging other debts of the plaintiffs, including their indebtedness to the Bank. Within the ten day period, however, the plaintiffs informed the defendant that they would not comply with their obligations under the statute, and that they would tender only the home improvements and not the money which they lawfully had owed to the Bank and now owed to the defendant for having discharged the earlier obligation.[13]

After having given a notice of rescission, but within the ten days within which the creditor must act, when the debtors committed an anticipatory breach of contract, taking the position that they would not make full restitution but only partial restitution, the creditor was no longer obligated to return the $50 payment or to cancel his security interest. What the debtors accomplished was not a rescission under the statute. In the face of such an anticipatory breach, the creditor was entitled to retain both the payment and its security interest.

We may well have been too technical in considering whether or not there was an anticipatory breach of contract under traditional contract principles. Rescission is an equitable doctrine, and there is nothing in the statutory provision of the right of rescission or in § 1635(b)'s provision of the procedural steps in effecting the right of rescission which limits the power of a court of equity to circumscribe the right of rescission to avoid the perpetration of stark inequity or to require that that be done now which ought to have been done in the first place. Section 1635(b), in its provision of a sequence of events, may work well in the normal case when both parties are properly advised and acting in full recognition of their rights and obligations. But surely the Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers. In equity, the lender here was entitled to the protection of the bank's earlier first mortgage and of the tax lien which it discharged. If it did not promptly satisfy and release its new mortgage, the penalty should not have been a release of the borrowers from an obligation of restitution which they were unprepared to discharge in the first place and had no intention of attempting to do so. The district court, and we, exercising traditional equity powers, may condition the borrowers' continuing right of rescission upon their tender to the lender of all of the funds spent by the lender in discharging the earlier indebt-

---

12. We assume that the notice of rescission, premised on the factual claim that no written disclosure had been made, was valid. Of course, we do not decide that it was, for the factual premise is unresolved.

13. The first notice of rescission was dated September 20, 1974, a Friday. The next business day was Monday, September 23, so that the defendant would have had until Thursday, October 3, within which to refund the $50 and cancel its security interest. The plaintiffs, however, mailed their second letter on Tuesday, October 1, which presumably was received on October 2, and it was that letter which gave the defendant notice that the plaintiffs would not perform their obligation of tendering both the home improvements and reimbursement of funds expended in discharging the debts of the plaintiffs.

As to the intent of the letter of October 1st, see fn. 11.

edness of the borrowers as well as the value of the home improvements.

■ This is not to excuse the lender from the penalties for violation of the Act. We have affirmed the imposition of the statutory penalties and the assessment of attorneys' fees in favor of the plaintiffs. What we do hold is that when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due.

We affirm the imposition of one civil penalty of $1,000 upon the defendant to be jointly paid to the plaintiffs. The judgment below is reversed insofar as it holds that the plaintiffs may rescind, or validly did rescind, without making full restitution. The judgment as to the attorneys' fees is vacated, for the district court may wish to reconsider the amount of that award in light of subsequent developments, and the case is remanded to the district court for further proceedings not inconsistent with this opinion.

*AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.*

WINTER, Circuit Judge (concurring in part and dissenting in part):

While I agree that plaintiffs may not recover more than a single civil penalty of $1,000 and that the district court should be free to increase the award of counsel fees to compensate plaintiffs' counsel for his services in this appeal, I think that the majority otherwise misreads the record and misapplies the law. In my view, plaintiffs rescinded the transaction in accordance with the Act. I find no basis on which to say that they committed an anticipatory breach of any obligation which the Act imposed on them. To the contrary, defendant failed to fulfill its obligations under the Act with the legal effect, in my view, of forfeiting the return of the home improvements or payment of their reasonable value. Defendant's right, if any, to reimbursement for the sums it paid in satisfaction of plaintiffs'

indebtednesses existing at the time that the new loan was made must be determined by state law. I would vacate the judgment and remand the case for further proceedings, but on a basis different from that outlined by the majority. From a contrary disposition, I respectfully dissent.

I.

Plaintiffs' September 20, 1974 letter of rescission, written and signed by Eugene R. Powers, identified the July 22, 1974 loan and stated: "I am cancelling the transaction in accordance with my rights under the Federal Truth-in-Lending Act. To date *none of the disclosures* required by the Truth-in-Lending Act have been given to me or my wife." (Emphasis added.)

The majority suggests that this notice was ineffective to rescind the transaction unless the plaintiffs' claim that they never physically received the defendant's disclosure statement and notice of right to rescission is substantiated on remand. At the same time, the majority concludes that the lender failed to give notice of plaintiffs' three-day right of rescission. On that single ground, the majority upholds the district court's conclusion that the defendant's disclosure documents, even if received, were not in full compliance with the Act, and hence that the plaintiffs *could* have rescinded the transaction had they worded their notice of rescission differently. Thus, the majority appears to hold: (1) that a notice of rescission must be accompanied by a statement of reasons therefor, which must subsequently prove accurate; and (2) that the reason stated by Eugene Powers in his September 20 letter was insufficient to embrace the insufficiency in disclosure found by the majority. I disagree with both conclusions.

First, I would conclude that the district court correctly decided that plaintiffs had a right to rescind on each of the several grounds identified by the district court. More importantly, I think it clear that neither the Act nor Regulation Z requires that a notice of rescission specify the reasons therefor; significantly the majority cites no

authority to support its invocation of the vague notion of "fairness" to suggest a contrary conclusion. Plaintiffs' assignment of a reason was superfluous. Unless it was so narrow as to have seriously misled the defendant—and for reasons I shall state shortly, I do not believe it was—I would simply disregard this portion of the September 20 letter and allow the plaintiffs to rely on any available legal ground to support rescission.

Second, I think that plaintiffs' assigned reason for rescission—that "none of the disclosures" required by the Act had been received—was essentially correct. The majority interprets this phrase as referring only to the physical absence of the disclosure documents.[1] I construe it differently. The Act requires numerous specific disclosures to be made relating to various terms of the credit transaction, and these disclosures must be made in a particular way. Thus, the reference to "disclosures required by the Truth-in-Lending Act" logically embraces not just the delivery of two pieces of paper, but the legal sufficiency of the disclosures contained therein. In my view, the use of the broad phrase may well have been intended to preserve the right later to challenge every possible aspect of the disclosures. Since I think this tactic perfectly permissible, inasmuch as no reason at all need be assigned, and since at least one required disclosure is now found to have been legally wanting, I conclude that even if the superfluous assigned reason has legal relevance, it was sufficient to put the defendant on notice that it would be called upon to defend its disclosures and could not be considered misleading.

## II.

The events following the September 20, 1974 notice of rescission and their legal effect can be evaluated only in the light of the Act, and so I first turn to it.[2] Section 1635(b) of Title 15, U.S.C., contains the controlling language and it provides an overall three-step scheme:

(1) "When an obligor exercises his right to rescind . . . he is not liable for any finance or other charge, and any security interest given by the obligor becomes void upon such rescission."

(2) "Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property . . . and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction."

(3) "Upon the performance of the creditor's obligations . . . the obligor shall tender the property to the creditor [or if return is impracticable, its reasonable value] . . . ."

If the steps contemplated by (2) and (3) are fully performed, such performance, coupled with the provisions of (1), will serve to close out the transaction. But apparently in contemplation that (3) may not be fully performed, 15 U.S.C. § 1635(b) further provides that "[i]f the creditor does not take

---

1. The majority relies on the lender's understanding of the letter as confirmed by the allegations of the complaint. First, a recipient's understanding of a letter he receives may be relevant but it is not conclusive. The test is what a reasonable man would gather from the language of the letter, not what meaning the recipient may choose to place upon it. By the reasonable man test, the language of the letter would encompass not only the failure to supply physical documents but also to furnish information required to be disclosed under the Act and the regulations. Second, while the complaint alleges three instances of defendant's failure to supply physical documents, it also alleges *five* instances of failure to disclose requisite information. The latter, the majority fails to mention.

2. To my mind, the Act is the bible that we must follow. The majority places emphasis on the fact that the Act does not specifically *prohibit* the invocation of equitable doctrines in effecting a *statutory* right of rescission. I think it more significant that in establishing a statutory remedy Congress did not *authorize* the invocation of equitable doctrines. In short, where the statute is clear and unambiguous, it should be applied as written and not subverted by judicial notions of propriety. I add that, even if equitable doctrines are to be invoked, it is new law to me to permit the lender, who obviously defaulted under the Act, to bootstrap his own default into a victory.

possession of the property within ten days after tender . . . ownership of the property vests in the obligor without obligation on his part to pay for it."

I particularly note that, *by their terms,* each of these three provisions is conditioned and contingent upon the preceding condition having been performed. Thus, the creditor's obligation to return money and property and to confirm cancellation of the security interest, (2), comes into play only after a notice of rescission; and the obligor's obligation to tender property to the creditor, (3), comes into play only after the creditor has fulfilled his obligation as set forth in (2).

With the provisions of the statute in mind, I examine the facts.

Plaintiffs' September 20, 1974 letter of rescission must have been received the next day or shortly thereafter, because defendant responded by two letters, both dated September 25, 1974. In one, addressed to plaintiffs, defendant, placing a specific and not generic meaning on the phrase "the disclosures," as employed in plaintiffs' letter, wrote that plaintiffs had received the documents to which they were entitled under the Act and since they had not exercised their three-day right of cancellation in three days, "your attempted cancellation of the transaction is hereby denied and rejected." In the other, addressed to plaintiffs' counsel, defendant's counsel transmitted a copy of the "Disclosure Statement" and accused plaintiffs of making an untrue statement that they had never received this document.

On October 1, 1974, plaintiffs wrote defendant another letter. Because the majority and I differ so markedly about what it says, what it means and its legal effect, I set it forth in the margin.[3]

The majority asserts that plaintiffs said in this letter that they would not reimburse defendant for sums which it paid to satisfy plaintiffs' obligation on their mortgage, taxes, insurance, etc., existing at the time that they made the loan in suit, and this they treat as an anticipatory breach of plaintiffs' obligation under 15 U.S.C. § 1635(b) so as to justify requiring plaintiffs to reimburse defendant for these sums, notwithstanding defendant's omissions and defaults.

I read the letter in vain for any such language. It does not say that plaintiffs decline to reimburse defendant for sums advanced by defendant for plaintiffs. It is merely a gratuitous offer by plaintiffs to return the home improvements or their reasonable value—a statement not required to be made by the Act and an anticipation of plaintiffs' obligation under the Act which had not yet arisen. To the extent that it speaks, the letter is no more than an assurance that plaintiffs expected to fulfill at least part of their statutory obligations when they arose.

I can see no factual basis on which to treat the October 1, 1974 letter as an anticipatory breach. Of course, the subject of plaintiffs' reimbursing defendant for its payment of plaintiffs' preexisting debts did appear in later communications. In a letter dated October 8, 1974, defendant's counsel wrote to plaintiffs' counsel confirming an offer of settlement made by the former. The proposal was that (a) plaintiffs repay

---

3.     Route 2, Box 69
       Glen Allen, Virginia
       October 1, 1974

SIMS & LEVIN
Travelers Building
1106–8 E. Main Street
Richmond, Virginia 23219
Dear Sirs:
I have received your letter dated September 25, 1974, denying my right to cancel and rescind the transaction we entered into on or about July 22, 1974. In my letter of September 20, 1974, notifying you of my decision to cancel the transaction, I neglected to offer to return to you the property constituting the home improvements made or if this is not possible the reasonable value of the property. This letter is intended to inform you that I am willing to return to you the property constituting the home improvements or if this is not possible, the reasonable value of the property.
Please let me know whether this offer changes your previous position regarding recission [sic].
/s/ Eugene R. Powers

the sums advanced, the costs of making the loan, return an air conditioner, and pay the cost of home improvements, in which event defendant would release the mortgage and return $50 payment, *or* (b) the original loan be renegotiated to reduce monthly payments to $50 and an adjustment made for home improvement work that was defective or incomplete. By letter dated October 9, 1974, plaintiffs' counsel rejected the alternative proposals of settlement.

I cannot read the record to establish that plaintiffs made any comment with regard to reimbursement for payment of preexisting debts *before* October 9.[4] By that time, defendant was in default in that it had failed, within ten days following receipt of the notice of rescission, to refund the $50 payment and to take action appropriate to reflect the termination of its security interest which was voided by plaintiffs' notice of rescission, incorrectly asserting that plaintiffs were required to comply with step (3) of the statutory scheme—tender of the property received—*before* it took the action required of it by step (2). Defendant's default makes it impossible for plaintiffs to be guilty of a subsequent anticipatory breach, and prevents any relation back of plaintiffs' position as set forth in the October 9, 1974 letter of their counsel, to their letter of October 1, 1974, which cannot in itself be read as repudiating their statutory obligations.

### II.

As I view the case in light of the statute, plaintiffs effectively rescinded the transaction on September 20 simply "by notifying the creditor . . . of [their] intention to do so." 15 U.S.C. § 1635(a). The rescission extinguished plaintiffs' contractual obligation to make further monthly payments. Also on that date, defendant's security interest became void by operation of 15 U.S.C. § 1635(b). Plaintiffs had an inchoate statutory obligation to tender the return of the property they had received, but this duty never ripened because defendant never fulfilled its antecedent obligation to refund the $50 payment and take action to reflect the voiding of its security interest.[5]

The only remaining question is whether the defendant may still have a viable state-law action against plaintiffs for unjust enrichment, sounding in quasi-contract. I assume that such an action is generally available in Virginia to recover moneys paid in performance of a contract which has been rescinded by operation of law, although it could be that the unjust enrichment remedy would be denied by a state court to a party whose unlawful action precipitated the rescission. *See* 6A A. Corbin, Contracts §§ 1534–41. I conclude that under the facts of this case, defendant may still have available such a remedy.

Section 1635, Title 15, U.S.C., provides: "If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it." If this sentence is applicable, clearly no state law remedy is available to the defendant. It may seem that § 1635 cannot be invoked, for it does not fit the facts of this case; there has been no tender by the obligors (plaintiffs), and tender of the property received by the obligors is a condition precedent to the creditor's duty to take possession of the property. However, in my view, the application of general contract law principles leads to the conclusion that the performance of the condition of tender has been excused, because the defendant prevented its performance by failing to carry out its antecedent duties under the statutory scheme (return

---

4. As the majority points out, plaintiffs, in response to requests for admissions after suit was instituted, stated that they "did not intend and were not prepared to tender" reimbursement for defendant's payment of plaintiffs' preexisting obligations. But this response was not filed until *October 23,* long after defendant was in default.

5. Had defendant fulfilled its obligation to refund the $50 payment and to release its security interest of record, I think that plaintiffs' obligation to reimburse defendant for sums it advanced in payment of plaintiffs' preexisting indebtedness would have then arisen.

of payments and release of security interest within ten days of rescission).

Restatement of Contracts § 295 provides:

If a promisor prevents or hinders the occurrence of a condition, or the performance of a return promise, and the condition would have occurred or the performance of the return promise been rendered except for such prevention or hindrance, the condition is excused  .  .  . .

Since the tender was excused, the defendant's duty to take possession of the property matured just as if tender had been timely made.

If a condition in a contract is excused, the promisor becomes subject to a duty to perform without the existence or occurrence of the condition  .  .  .  . Restatement of Contracts § 294.

Thus, "the creditor [did] not take possession of the property within ten days after tender by the obligor," and defendant may keep it.

However, a condition is excused only if the obligee prevented its performance *and* "the performance of the return promise [would have] been rendered except for such prevention  .  .  . ." As applied to the facts of this case, this principle means that the plaintiffs' duty to tender was excused only if they would have tendered had the defendant not ignored its statutory obligations. While the present record shows that plaintiffs intended to return the home improvements or their reasonable value, it does reflect their admission that they were neither prepared nor intended to make the required tender of sums paid by defendant in satisfaction of their preexisting indebtedness. Thus, I would declare a statutory forfeiture of the home improvements, but I would remand the case to the district court for a determination of whatever state law remedies the defendant may have with respect to recovery of sums paid by defendant in satisfaction of plaintiffs' preexisting indebtednesses.