**FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity, Appellee,**

v.

**HUGHES DEVELOPMENT COMPANY, INC., Francis R. Hughes, and Bernadette J. Hughes, Appellants.**

**FEDERAL DEPOSIT INSURANCE, CORPORATION, in its corporate capacity, Appellee,**

v.

**HUGHES DEVELOPMENT COMPANY; Francis R. Hughes; Bernadette J. Hughes, Appellants.**

**Nos. 90–5442, 91–1060.**

United States Court of Appeals, Eighth Circuit.

Submitted June 7, 1991.

Decided July 11, 1991.

Appellants appeared pro se.

Eric J. Magnuson, Stephen O. Plunkett, Kenneth S. Gunthner, Minneapolis, Minn., for appellees.

Douglas W. Keenan, Mpls., Minn., for appellants.

Before McMILLIAN, FAGG and MAGILL, Circuit Judges.

McMILLIAN, Circuit Judge.

Francis R. Hughes and Bernadette J. Hughes appeal two orders of the district court for the District of Minnesota:[1] its June 18, 1990 order of foreclosure in favor of the Federal Deposit Insurance Corp. (FDIC), and its October 10, 1990 order vacating the foreclosure sale and ordering a new sale. For reversal the Hugheses argue that the district court erred in (1) conditioning their loan rescission under the Truth In Lending Act (TILA), 15 U.S.C. § 1635 (1988), upon tender of the loan principal to the FDIC; and (2) vacating the foreclosure sale held September 6, 1990, at which the Hugheses were the only bidders due to a mistake committed by the FDIC's

---

1. The Honorable David S. Doty, United States District Judge for the District of Minnesota.

attorney. For the reasons discussed below, we affirm both orders.

On June 18, 1982, the Hugheses acquired a $100,000 home improvement loan from Guaranty State Bank of St. Paul, and gave the bank a mortgage covering their residence. On June 20, 1984, the Hugheses sent a rescission notice to the bank pursuant to TILA asserting that the bank had failed to make required disclosures. Thereafter the bank was adjudged insolvent and the FDIC was appointed receiver. The FDIC purchased the Hugheses' note and mortgage. The FDIC subsequently notified the Hugheses that they were in default, and after the Hugheses failed to cure the default, the FDIC brought the instant foreclosure action in the district court. On April 13, 1988, the district court granted the Hugheses' motion for summary judgment in part, holding that the Hugheses were entitled to enforce the rescission under TILA, but conditioning their right of rescission upon their tender of the loan principal within one year. The order provided that failure to tender the funds within that time would entitle the FDIC to foreclose. Neither party appealed.

In November or December 1988 the FDIC rejected a settlement offer made by the Hugheses,[2] and on July 7, 1989, the FDIC brought a motion for summary judgment seeking a decree of foreclosure. Following a hearing, the court granted the motion on June 18, 1990, ordered foreclosure and provided for a deficiency judgment. The sale was set for September 6, 1990. On August 17, 1990, the Hugheses appealed the June 18, 1990 order and sought to stay the sale pending appeal. The FDIC requested that a bond be required to stay the sale. On September 4,

1990, the court agreed to stay the sale if the Hugheses posted a bond. The bond was never posted and the sale took place as scheduled. Believing the Hugheses would post the bond and the court would grant the stay, the FDIC did not attend; Mr. Hughes bid ten dollars and the United States Marshal accepted his bid.

On September 21, 1990, the FDIC filed a motion to vacate the sale. The FDIC filed the affidavit of its attorney which stated that after communication with court personnel on September 4, 1990, he believed the Hugheses would post the bond, but that he did not check with the court or the marshal's office on September 5 or 6, 1990, to determine if the sale had, in fact, been stayed. On October 10, 1990, the district court, applying Minnesota law, vacated the sale and ordered a new sale. The Hugheses appealed. They have obtained a stay of the resale pending these appeals.

■ While it is not entirely clear whether the April 13, 1988 order of the district court was a final appealable order, the Hugheses' argument that the district court erred in conditioning their rescission on the return of the principal is, in any event, without merit. TILA generally provides that the creditor shall perform first (i.e., return monies paid by the debtor and release its security interest); however, the Act gives courts discretion to devise other procedures, 15 U.S.C. § 1635(b), including conditioning rescissions upon the debtor's prior return of the principal. *See Rudisell v. Fifth Third Bank*, 622 F.2d 243, 254 (6th Cir.1980); *Powers v. Sims & Levin*, 542 F.2d 1216, 1222 (4th Cir.1976); *LaGrone v. Johnson*, 534 F.2d 1360, 1362 (9th Cir. 1976).[3]

---

**2.** The Hugheses offered $10,000, three condominium garage stalls, and a two-year note for $66,000.

**3.** The Hugheses' argument that their fall or winter 1988 settlement offer satisfied the condition of the April 13, 1988 order is meritless. *See, e.g., Bustamante v. First Fed. Sav. & Loan Ass'n*, 619 F.2d 360, 365 (5th Cir.1980) (borrower must restore lender to status quo).

The Hugheses' argument that TILA precluded the district court from awarding interest, taxes and attorneys' fees is also without merit. TILA

does not apply to the court's award because the Hugheses failed to rescind under TILA. The foreclosure was ordered pursuant to Minnesota law which gives the court discretion to make such awards. *See* Minn.Stat.Ann. §§ 581.03, 582.01 (attorneys' fees) (West 1988); *Spencer v. Levering*, 8 Minn. 461 (1863) (taxes paid by mortgagee may be recovered as part of mortgage debt).

Whether the court erred in vacating the September 6, 1990 foreclosure sale is controlled by Minnesota law. We review questions of state law de novo. *Salve Regina College v. Russell,* —— U.S. ——, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991). As the district court noted, Minnesota courts have vacated foreclosure sales where mortgagees' attorneys' mistakes have unfairly prejudiced the mortgagees. *Romkey v. Saumweber,* 170 Minn. 438, 212 N.W. 816 (1927) (*Romkey*) (attorney mistakenly excluded most valuable lots from foreclosure sale); *Peterson v. First National Bank,* 162 Minn. 369, 203 N.W. 53 (1925) (*Peterson*) (attorney grossly underbid property and appellants tried to exercise their right to redeem at bid price); *TCF Banking & Savings, F.A. v. Loft Homes, Inc.,* 439 N.W.2d 735 (Minn.Ct.App. 1989) (*TCF Banking*) (same).

These cases employ an equity analysis established in *Peterson.* In *Peterson,* the court explained that the sale would be vacated given the following equitable considerations: (1) the mortgagee was blameless and had fallen into serious error which promised a disastrous result; (2) the mortgagee was not negligent; (3) the defendants (the mortgagor in conspiracy with others who had liens on the property) had knowledge of the mortgagee's mistake and attempted, by inequitable conduct, to secure an unconscionable advantage of mortgagee and unjustly enrich themselves at his expense; and (4) the court could restore the status quo. 203 N.W. at 56.

The Hugheses argue they were not unjustly enriched because the FDIC was still entitled to a deficiency judgment; but, in *Peterson,* elimination of the security interest constituted unjust enrichment. The court in that case said the claim, minus the mortgage, was "worthless" given the mortgagor's apparent insolvency. *Id.* at 53. The Hugheses assert they did not know of the mistake made by the FDIC's attorney. In *Romkey,* however, the court apparently inferred knowledge that a mistake had occurred from the great disparity between the value of the property and the bid. *Romkey,* 212 N.W. at 816. Knowledge of how the mistake is made has not been required. *TCF Banking,* 439 N.W.2d at 738. Finally, the Hugheses assert they engaged in no inequitable conduct: they made the low bid in good faith only after being informed that no minimum bid was required and on the basis of news reports about government properties being auctioned for as little as one dollar. Yet, in *Romkey* the sale was vacated even though the mortgagor engaged in no affirmative misconduct—he simply stood to gain the release of the mortgage on the most valuable lots, including the residence, because the mortgagee failed to designate those lots for foreclosure. 212 N.W. at 816. In sum, we conclude that the district court properly vacated the September 6, 1990 foreclosure sale.

Accordingly, the orders of the district court are affirmed.