Linda A. CARRINGTON, Plaintiff,

v.

**HSBC BANK USA, N.A., Defendant.**

**Civil Action No. 2:10cv208.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Oct. 29, 2010.

Henry W. McLaughlin, III, The Law Office of Henry McLaughlin, P.C., Richmond, VA, for Plaintiff.

Robert Ryan Michael, Bierman Geesing & Ward LLC, Richmond, VA, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

RAYMOND A. JACKSON, District Judge.

Before the Court is Defendant HSBC Bank USA, N.A.'s Motion to Dismiss Amended Complaint Pursuant to Fed. R.Civ.P. 12(b)(6). This matter has been fully briefed by both parties and is ripe for judicial determination. For the reasons stated herein, Defendant's Motion to Dismiss for failure to state a claim upon which relief may be granted is **GRANTED** in part and DENIED in part.

### I. FACTUAL AND PROCEDURAL HISTORY

On June 24, 2010, Plaintiff, Linda A. Carrington ("Carrington"), filed an Amended Complaint against Defendant, HSBC Bank USA, N.A. ("HSBC"), under the Truth–in–Lending Act("TILA"), 15 U.S.C. § 1601 *et seq.,* seeking, *inter alia,* a

declaratory judgment that she sent a valid notice of rescission of her credit transaction, pursuant to 15 U.S.C. §§ 1635 and 1641(c), and statutory damages in the amount of $4,000, pursuant to 15 U.S.C. § 1640.

In her Amended Complaint, Carrington alleges that, on July 20, 2007, she refinanced her primary residence with Decision One Mortgage Company, LLC ("Decision One"). Am. Compl. ¶ 6. The credit transaction between Carrington and Decision One was evidenced by a note in the amount of $206,000. Am. Compl. ¶ 6. According to Carrington, Decision One failed to make certain required material disclosures regarding the credit transaction, including the amount of the finance charge. Am. Compl. ¶ 8. Specifically, Carrington alleges that the cost of title insurance, in the amount of $653.28, which Decision One required her to purchase, was not included within the finance charge. Am. Compl. ¶ 17–18. Carrington asserts that the title insurance was not bona fide, as it was charged pursuant to Decision One's requirement that Carrington use a particular insurer, in violation of Va.Code. Ann. § 6.1–330.70(B) (current version at Va. Code Ann. § 410 (effective Oct. 1, 2010)).[1] Am. Compl. ¶ 19. Thus, Decision One's failure to include the title insurance in the finance charge violated TILA, as the charge could not properly be excluded as bona fide and reasonable. Am. Compl. ¶ 19; *see* 12 C.F.R. § 226.4(c) ("The following charges are not finance charges: ... The following fees in a transaction secured by real property or in a residential mortgage transaction, if the fees are *bona fide* and *reasonable* in amount: (i) Fees for title examination, abstract of title, title in-

surance, property survey, and similar purposes." (emphasis added)). Carrington further alleges that Decision One failed to properly advise her of her right to rescind, as required by 15 U.S.C. § 1635(a), by requiring her to sign an Arbitration Agreement which materially undermined the Notice of Right to Cancel. Am. Compl. ¶¶ 9, 12; *see* 15 U.S.C. § 1635(a) ("The creditor shall clearly and conspicuously disclose ... to any obligor in a transaction subject to this section the rights of the obligor [to rescind].").

Carrington defaulted on the note with Decision One. Am. Compl. ¶ 21. Subsequently, Decision One assigned the note to HSBC, which appointed Equity Trustees, LLC ("Equity Trustees") as substitute trustee on the deed of trust, and instructed it to foreclose on Carrington's home on March 18, 2010. Am. Compl. ¶ 22–23. A foreclosure auction of the home was scheduled for May 12, 2010. Am. Compl. ¶ 23. On May 5, 2010, Carrington, by counsel, sent a notice of rescission to Decision One, HSBC, and Equity Trustees, requesting that the scheduled foreclosure auction be cancelled. Am. Compl. ¶ 24. The foreclosure originally scheduled for May 12, 2010 was cancelled, but was rescheduled for June 2, 2010. Am. Compl. ¶ 28. On May 19, 2010, Carrington, by counsel, sent a second notice of rescission to HSBC and the second foreclosure auction was also cancelled. Am. Compl. ¶ 29–30. In the Amended Complaint, Carrington asserts that neither Decision One nor HSBC ever tendered rescission of the note or responded to her notice of rescission. Am. Compl. ¶ 31. Carrington further asserts that she would be able to tender the amount neces-

---

1. Va.Code Ann. § 6.1–330.70(B) provides, in relevant part: "In the case of loans secured by deeds of trust or mortgages on one to four family residences, the lender may not require the borrower to use the services of a particu-
lar attorney, surveyor or insurer. However, the lender shall have the right to approve any attorney, surveyor, or insurer selected by the borrower, provided such approval is not unreasonably withheld."

sary for TILA rescission, either through refinancing or, as a last resort, by sale of the home, though she is unaware of the exact amount she would be required to tender. Am. Compl. ¶ 33.

On July 26, 2010, HSBC filed the instant Motion to Dismiss Amended Complaint. Carrington filed her Memorandum in Opposition to the Motion on August 9, 2010. A hearing on this matter was requested by HSBC on September 9, 2010, and oral argument was held before this Court on October 26, 2010. Accordingly, this matter is now ripe for judicial determination.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers,* 762 F.2d 30, 31 (4th Cir.1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir.2000). A complaint need not contain "detailed factual allegations" in order to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not

equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal,* 129 S.Ct. at 1949, and *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

## III. DISCUSSION

Defendant, HSBC, asserts that Plaintiff's Amended Complaint should be dismissed for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). HSBC sets forth three bases for its contention. First, HSBC charges that Carrington failed to state a claim for TILA rescission because she failed to plead facts to support her allegation that the title insurance was not bona fide and reasonable. Def.'s Mem. Supp. at 5–9. Second, HSBC claims that Carrington cannot state a claim for rescission against an assignee of the note, where the TILA violation is not apparent on the face of the disclosure statement. Def.'s Mem. Supp. at 9–11. Finally, HSBC argues that Carrington has not adequately pled that she has the ability to tender the borrowed funds back to HSBC, as required by TILA. Def.'s Mem. Supp. at 12–14. The Court addresses each of HSBC's arguments in turn.

Additionally, during oral argument, HSBC, for the first time, asserted that Carrington could not state a claim for rescission based on HSBC's failure to properly advise Carrington of her right to rescind due to certain language used in the Arbitration Agreement signed between Carrington and HSBC. However, since

HSBC neglected to raise this argument in its pleadings, the Court declines to address this issue.

## A. Under-disclosure of the Finance Charge

HSBC first asserts that Carrington cannot state a claim for rescission under TILA based on her contention that the finance charge was under-disclosed. Specifically, HSBC argues that Carrington failed to plead facts sufficient to demonstrate that the title insurance should not have been excluded from the finance charge because it was not bona fide. Def.'s Mem. Supp. at 8. In response, Carrington argues that the title insurance was not bona fide because it was charged in violation of Virginia state law. PL's Mem. Opp'n at 5. Before addressing the parties' arguments, the Court will examine the statutory text and history of the TILA.

Congress enacted TILA in order to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). Accordingly, TILA and its implementing regulation, 12 C.F.R. § 226 ("Regulation Z"), require creditors to "clearly and conspicuously" disclose certain information pertaining to credit transactions, including the finance charge, which is defined as the sum of all charges imposed by the creditor as an incident to or a condition of the extension of credit. 15 U.S.C. §§ 1632(a), 1605(a); 12 C.F.R. § 226.4(a). Where a credit transaction is secured by an interest in real property, title insurance is specifically exempted from the computation of the finance charge. 15 U.S.C. § 1605(e)(1). However, such title insurance is only exempted from inclusion in the finance charge where it is

"bona fide and reasonable in amount." 12 C.F.R. § 226.4(c)(7).

TILA provides individuals with a civil cause of action for damages against any creditor who fails to make the required disclosures under the Act. *See* 15 U.S.C. § 1640(a). Furthermore, where a credit transaction is secured by an interest in property that is used as the principal dwelling of the person to whom credit was extended, the obligor enjoys a right to rescind the transaction until midnight on the third business day following the latter of either consummation of the transaction or delivery of the information, rescission forms, and material disclosures. 15 U.S.C. § 1635(a). However, where the creditor fails to provide the required information and disclosures, the right to rescind is extended from three days to three years following the earlier of either consummation of the transaction or the sale of the property. 15 U.S.C. § 1635(f). Plaintiff has raised both a cause of action for damages, pursuant to § 1640, and a right of rescission, pursuant to § 1635. Specifically, Carrington alleges that HSBC violated the disclosure requirements of TILA by failing to include the $653.28 title insurance fee within the disclosed finance charge, and thus she is entitled to rescission of the loan. Am. Compl. ¶ 20. Consequently, Carrington also seeks statutory damages based on HSBC's failure to tender rescission as required. However, HSBC argues that Carrington failed to plead sufficient facts to support the legal contention that the fee was not bona fide. Def.'s Mem. Supp. at 7; *see also Iqbal,* 129 S.Ct. at 1949.

■ Neither TILA nor Regulation Z define the term "bona fide" as used in 12 C.F.R. § 226.4(c)(7). However, 12 C.F.R. § 226.2(b)(3) provides that where a term is not defined within the regulation, "words used have the meanings given to them by

state law or contract." Under Virginia law, where, as here, a term lacks a statutory definition, "the statutory term is given its ordinary meaning, given the context in which it is used." *Commonwealth, Dep't of Taxation v. Orange–Madison Cooperative Farm Serv.*, 220 Va. 655, 261 S.E.2d 532, 533–34 (1980). The ordinary meaning of "bona fide" is "made or done in good faith, without deception or fraud; authentic, genuine, real." *See* Random House Webster's College Dictionary (1997); *see also* Black's Law Dictionary 69 (1996) (defining "bona fide" as "made in good faith; without fraud or deceit; sincere; genuine.").

While the opinions of courts interpreting whether a fee is bona fide are scarce, HSBC argues that the courts that have analyzed this phrase have determined that the inquiry hinges on whether the services were actually provided or instead, whether the fees were charged for unstated services. Def.'s Mem. Supp. at 7; *see e.g., Inge v. Rock Fin. Corp.*, 388 F.3d 930, 939 (6th Cir.2004) ("Plaintiff has not cited the Court to any evidence in the record that Defendant's $120 document preparation fee was not bona fide in the sense that it included charges for services other than document preparation."); *Guise v. BWM Mortg., LLC*, 377 F.3d 795, 800 (7th Cir. 2004) ("The plaintiffs did not allege in their complaint . . . that they did not receive title insurance . . . , nor did the complaint allege any facts to give rise to the inference that [the insurer] failed to perform those services. The district court had no reason to conclude that the transaction was anything but bona fide."); *Capparelli v. AmeriFirst Home Improvement Fin. Co.*, 535 F.Supp.2d 554, 562 (E.D.N.C. 2008) (noting that "[c]ourts' inquiries therefore focus on whether the services were actually provided or whether the fee included charges for unstated services"). However, none of the cases cited by HSBC directly addressed the issue of whether a fee imposed in violation of state law may be considered to be "bona fide" under TILA.

While fees charged in violation of state law may not necessarily comport with the "authentic, genuine, real" definition of "bona fide," where such fees are knowingly imposed in violation of state law, they may constitute fees that are lacking in good faith, or are fraudulent and deceitful, which is also encompassed by the term "bona fide." The few cases that have shed light on whether a fee imposed in violation of state law satisfies the bona fide requirement, tend to support the argument raised by Plaintiff. *See, e.g., Postow v. OBA Fed. Sav. & Loan Ass'n*, 627 F.2d 1370, 1372 n. 2 (D.C.Cir.1980) (noting in dicta that "[a]s interpreted by the Board, charges for requirements imposed in violation of state law are not bona fide"); *Postow v. Oriental Bldg. Ass'n*, 390 F.Supp. 1130, 1134 (D.D.C.1975) (concluding that because Plaintiffs failed to substantiate their argument that the title fees were imposed in violation of state law, the fees could not be included within the finance charge as being not bona fide); *see also In re Grigsby*, 119 B.R. 479, 488 (Bankr.E.D.Pa.1990) ("However, a charge for required owner's title insurance would not be bona fide where the creditor's requirement that such insurance be purchased constitutes a violation of state law." (quoting Ralph J. Rohner, The Law of Truth in Lending ¶ 3.03[2][a] (1984))), *vacated on other grounds*, 127 B.R. 759 (E.D.Pa.1991). Applying the ordinary definition of bona fide as "made or done in good faith, without deception or fraud," the Court finds that a fee knowingly imposed in violation of state law would fail to meet the bona fide requirement.

■ Turning to Plaintiff's Amended Complaint, Carrington alleges that Deci-

sion One's imposition of the title insurance fee violated state law because it required that Carrington use a particular insurer. Accepting Carrington's factual allegations that she was required to use a particular insurer as true, the title insurance fee could have only been imposed in bad faith, or with fraud or deceit, where HSBC knew or had reason to know that it was acting in violation of state law. Thus, in order to sufficiently plead that the fee was not bona fide, Carrington must plead not only that the fee was imposed in violation of state law, but must also plead facts that indicate that HSBC knew of the violation and nevertheless imposed the fee. Carrington fails to make such factual allegation in her Amended Complaint.

For the reasons outlined above, the Court finds that Plaintiff has failed to state a claim against HSBC based on a violation of TILA for under-disclosure of the finance charge. Accordingly, Defendant HSBC's Motion to Dismiss is **GRANTED.** Because Plaintiff may be able to amend her Complaint to sufficiently present a theory of liability for under-disclosure, the Court provides Plaintiff with leave to amend her Complaint in accordance with this opinion.

**B. Failure to State Claim Against Assignee**

HSBC also asserts that Plaintiff cannot state a claim for rescission against HSBC because she has not pled that the alleged TILA violation was apparent on the face of the disclosure agreement. Def.'s Mem. Supp. at 9. Carrington counters by arguing that although assignees are only liable for statutory damages for apparent TILA violations, they are nevertheless subject to the right of rescission to the same extent as the original creditor. PL's Mem. Opp'n at 10.

TILA provides that "[e]xcept as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter ... which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). In turn, Section 1641(c) preserves the right of rescission by providing that "[a]ny consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." § 1641(c). While this Court has not directly interpreted these statutory provisions, most courts that have examined these two provisions contemporaneously, have determined that while civil actions for damages under Sections 1640(a) and 1641(a) require that a TILA violation be apparent on the face of the disclosure statement, the right of rescission is not subject to this limitation. *See, e.g., Parker v. Potter,* 232 Fed.Appx. 861, 865 (11th Cir.2007) ("An action for rescission under § 1635 is a distinct cause of action from a civil action for a violation of the TILA's disclosure requirements, and assignees are liable for rescission even if a disclosure violation is not 'apparent on the face,'" (citing *Rowland v. Novus Fin. Corp.,* 949 F.Supp. 1447, 1458 (D.Haw.1996)); *Frese v. Empire Fin. Servs.,* 725 F.Supp.2d 130, 135–37 (D.D.C.2010) (citing *Parker,* 232 Fed.Appx. at 865); *Peterson–Price v. U.S. Bank Nat'l Ass'n,* No. 09–495, 2010 WL 1782188, at *3 (D.Minn. May 4, 2010) (same); *Wilbourn v. Advantage Fin. Partners, LLC,* No. 09–CV–2068, 2010 WL 1194950, at *6 n. 11 (N.D.Ill. Mar. 22, 2010) (same); *Carmen v. Metrocities Mortg.,* No. 08–2729, 2010 WL 421115, at *6 (D.N.J. Feb. 1, 2010) (same); *Fullmer v. JPMorgan Chase Bank, NA,* No. 2:09–cv–1037, 2010 WL 95206, at *3 n. 3

(E.D.Cal. Jan. 6, 2010)) ("[A] consumer may rescind against an assignee to the full extent it would be able to rescind against the original creditor. The violation need not be apparent on the face of the statement in order to pursue a rescission remedy."); *Miranda v. Universal Fin. Grp., Inc.,* 459 F.Supp.2d 760, 765 n. 3 (N.D.Ill. 2006) ("Unlike a statutory damages claim against an assignee under § 1641(a), a rescission claim against an assignee under § 1641(c) may be brought even if there is no TILA violation apparent on the face of the loan documents."). *But see, e.g., Chiles v. Ameriquest Morg. Co.,* 551 F.Supp.2d 393, 398 n. 2 (E.D.Pa.2008) ("Although the statute also mentions that a consumer with the right to rescind may rescind against any assignee, the requirement of a violation in the disclosure statement is listed as a prerequisite to a cause of action.").

The clear language of the statute indicates that any consumer may have the right to rescind a transaction against any assignee to the same extent that she might rescind against the original creditor. 15 U.S.C. § 1641(c). Thus, the right of rescission is specifically exempted from the notice requirement of § 1641(a). Furthermore, this Court also recently indicated in dicta that the right to rescission is not encumbered by the requirement that the alleged violation be apparent on the face. *See Hudson v. Bank of Am.,* No. 3:09–CV–462, 2010 WL 2365588, at *3 (E.D.Va. June 11, 2010) ("Where a TILA violation is "evident on the face of the disclosure statement", an assignee may also be liable for damages under § 1640.... A borrower's right of rescission is unaffected by the assignment of the mortgage." (citations omitted)). Thus considering the language of the statute and the cases interpreting it, this Court finds that a plaintiff asserting a right of rescission against an assignee need not plead facts indicating that the alleged TILA violation was apparent on the face of the disclosure statements. Accordingly, Defendant HSBC's Motion to Dismiss for failure to state a claim for rescission against an assignee is **DENIED.**

### C. Ability to Tender Full Payment

Finally, HSBC contends that Carrington's claim for rescission should be dismissed as she has failed to sufficiently plead that she has or will tender the borrowed funds back to HSBC. Def.'s Mem. Supp. at 12. Specifically, HSBC argues that Carrington failed to assert any concrete steps that she has taken to secure funding to satisfy her tender obligations. Def.'s Mem. Supp. at 13. In response, Carrington relies on the fact that she has pled that the home in which the security interest was granted is worth more than she will be required to tender in rescission and that she stands ready to sell her home to satisfy the tender requirements. PL's Mem. Opp'n at 11.

Rescission seeks to restore the parties involved in the credit transaction to the "status quo ante." *Am. Mortg., Network, Inc. v. Shelton,* 486 F.3d 815, 820 (4th Cir.2007). "[W]hen rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due." *Id.* (quoting *Powers v. Sims & Levin,* 542 F.2d 1216, 1222 (4th Cir.1976)). In other words, rescission should not be granted where it is clear that the obligor cannot or will not tender the borrowed funds to the creditor. *Id.* ("Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in dis-

charging the prior obligations of the borrowers." (quoting *Powers*, 542 F.2d at 1221)). Thus where an obligor seeks rescission of a credit transaction and the trial judge determines that she is "unable to tender the loan proceeds, the remedy of unconditional rescission [i]s inappropriate." *Moore v. Wells Fargo Bank, N.A.*, 597 F.Supp.2d 612, 616 (E.D.Va.2009) (quoting *Shelton*, 486 F.3d at 821).

In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff asserting the right to rescission must allege sufficient facts that, when viewed in the light most favorable to plaintiff, establish the plausibility that she is able to tender the borrowed funds. *See Twombly*, 550 U.S. at 570, 127 S.Ct. 1955; *Cheche v. Wittstat Title & Escrow Co.*, No. 2:09–cv–577, 2010 WL 2802396, at *7 (E.D.Va. July 6, 2010). In *Moore*, the Court rejected the notion that a plaintiff seeking rescission must "conclusively establish her ability to tender through her Complaint," holding, instead, that a court considering a Rule 12(b)(6) motion to dismiss should not engage in a factual determination as to the plaintiff's actual ability to tender. 597 F.Supp.2d at 616–17. Despite Defendant's contentions that the state of the housing market rendered Plaintiff's ability to tender speculative and unlikely, the *Moore* Court determined that Plaintiff's assertions that she would be able to tender the loan proceeds by either refinancing or sale of her home were sufficient to survive the motion to dismiss. *Id.*

Similar to the plaintiff in *Moore*, Carrington asserts that she "would be able to tender the amount necessary for TILA rescission, either through refinancing or, as a last resort, by sale of the home." Am. Compl. ¶ 33. Further, Carrington affirms that she is willing and able to sell her home in order to satisfy the TILA tender requirement. *Id.* Nevertheless, HSBC contends that Carrington's assertions are merely speculative for three reasons. First, HSBC argues that because plaintiff is currently in default on her mortgage, she will be unable to tender through refinancing. Def.'s Mem. Supp. at 13. Second, HSBC states that Carrington's notice of rescission did not state that she could or would tender the loan proceeds. *Id.* Finally, HSBC asserts that because Carrington is unaware of the amount she would be required to tender, her ability to tender is merely illusory. *Id.*

Though Plaintiff's practical inability to refinance may be relevant to the factual inquiry as to her actual ability to tender, such an assessment is not appropriate at the 12(b)(6) stage. *See Moore*, 597 F.Supp.2d at 617. At this stage of the litigation, the Court must accept Plaintiff's factual allegations as true. *Id.; see also Erickson*, 551 U.S. at 94, 127 S.Ct. 2197. Thus, while Carrington's inability to secure refinancing based on her credit history may be relevant at a later phase in the litigation, it cannot be the basis for sustaining a motion to dismiss under Rule 12(b)(6). *See Moore*, 597 F.Supp.2d at 616 ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations." (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955)).

■ Furthermore, while it may be telling that Plaintiff's notice of rescission did not indicate her ability to tender the borrowed funds, the Court must consider the facts alleged in the Amended Complaint in the light most favorable to Plaintiff. In her Amended Complaint, Carrington asserts that she "would be able to tender" the borrowed funds. Am. Compl. ¶ 33. Although Carrington's language regarding her ability to tender may not be as strong as the "can and will" language espoused in the plaintiff's complaint in *Moore*, the Court cannot conclude that it is so specula-

tive as to render her assertion implausible. *Compare Moore,* 597 F.Supp.2d at 616 (finding Plaintiff's allegations that she "can and will tender the loan proceeds" sufficient to defeat Defendant's 12(b)(6) motion), with *Cheche,* 723 F.Supp.2d at 858 (holding that where Plaintiff alleged only that she "might be able to" tender payment rather than that she "can and will" tender, she failed to "nudge [her] claim [ ] across the line from conceivable to plausible" (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955)). Thus the Court concludes that Carrington's claim that she "would be able" to tender the funds is sufficient to withstand HSBC's Motion to Dismiss.

Finally, the Court cannot conclude that Plaintiff's admission that she is unaware of the precise amount she will be required to tender weighs in favor of Defendant's motion. In *Moore,* the Court found that Plaintiffs requests for a declaratory judgment as to the amount she would be required to tender, as well as for the Court to provide a reasonable time for Plaintiff to tender was directly at odds with Defendant's argument that Plaintiff did not intend to tender the funds in rescission. *Moore,* 597 F.Supp.2d at 617. Similarly, in this case, Carrington has also requested a declaratory judgment as to the amount she would be required to tender and that the Court use its equitable discretion to allow her a reasonable time to make tender. Am. Compl. ¶¶ 38, 40. As in *Moore,* this fact weighs in favor of, rather than negates Plaintiff's claim that she is willing and able to tender the borrowed funds. Furthermore, this case is readily distinguishable from *Hudson v. Bank of America,* where the Court determined that it could not reasonably conclude that the Plaintiff could pay the as yet unknown amount due on the loan within a reasonable period of time. *Hudson,* 2010 WL 2365588, at *5. In *Hudson,* the Court considered the con-

text surrounding the case, including the fact that the case had been pending for over a year and that Plaintiff claimed to be ignorant of the number of payments he had made on the mortgage, to determine that Plaintiff's ability to tender was merely speculative. *Id.* Unlike in *Hudson,* this case has been pending only for a few months, and it is not implausible that Carrington may be unaware of the exact amount she will be required to tender. Furthermore, though Carrington admits that she does not know the exact amount she will be required to tender, she avers, "on information and belief" that the amount will be approximately $144,000, while the value of her home is approximately $240,000. Am. Compl. ¶ 33. Thus, Carrington's allegations concerning the amount owed in TILA rescission are sufficient to render her claim that she will be able to tender plausible on the face of her complaint.

Having concluded that Plaintiff has adequately pled that she will be able to tender the borrowed funds in rescission, the Court finds that Plaintiff has stated a valid claim for TILA rescission against HSBC. Accordingly, Defendant HSBC's Motion to Dismiss for failure to plead the ability to tender is **DENIED.**

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) is **GRANTED** in part and **DENIED** in part. Defendant's Motion to Dismiss for failure to state a claim against HSBC based on a violation of TILA for under-disclosure of the finance charge is **GRANTED.** However, Plaintiff is granted leave to amend her complaint in accordance with this Opinion and Order within ten (10) days of the date of this Order. Defendant's Motion to Dismiss for failure to state a claim for rescis-

sion against an assignee and for failure to plead the ability to tender payment is **DE-NIED.**

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED.**