**In re Charles R. MARSHALL and Laura Bell Marshall, Debtors.**

**Charles R. MARSHALL and Laura Bell Marshall, Petitioners–Debtors,**

v.

**FARM CREDIT BANK OF ST. LOUIS and Central Production Credit Association, Respondents–Creditors.**

**Bankruptcy No. 89–80790.**

United States Bankruptcy Court, C.D. Illinois.

Dec. 5, 1989.

Barry M. Barash, Galesburg, Ill., for debtors.

Robert Lindstrom, Mustain & Lindstrom, Galesburg, Ill., for Farm Credit Bank of St. Louis and Central Production Credit Ass'n.

## OPINION

WILLIAM V. ALTENBERGER, Bankruptcy Judge.

The Debtors, husband and wife, are engaged in farming and filed a Chapter 12 proceeding. Prior to the filing the Debtors owned certain real estate (Tract 2), and were leasing from Mr. Marshall's mother and father (Senior Marshalls) certain other real estate (Tract 1). Subsequently, the Senior Marshalls borrowed money from the Farm Credit Bank of St. Louis (BANK) and mortgaged Tract 1 to the BANK. The Senior Marshalls also borrowed from the Central Production Credit Association (ASSOCIATION) and the Debtors mortgaged Tract 2 as security for that debt. The Debtors also borrowed $125,000.00 from the BANK secured by a mortgage on a third tract of real estate which was satisfied in August of 1985 through a deed in lieu of foreclosure.

In June of 1988, the Senior Marshalls, pursuant to the Agricultural Credit Act of 1987, 12 U.S.C. Section 2202, requested the BANK to restructure all of their obligations. The Senior Marshalls and the Debtors presented a plan whereby the Senior Marshalls would convey Tract 1 to the Debtors, with the BANK and the Association being paid the appraised value of the two tracts and the Debtors becoming personally liable for the indebtedness secured by the two tracts, but only in the amount of the appraised value of the two tracts. The BANK denied the request for debt restructuring.[1]

---

1. The Stipulation of Facts indicates that the "credit review committee of FCB sustained the Sr. Marshalls' restructure request." However, the documentation attached to the Stipulation indicates that the request for debt restructuring was denied.

The Senior Marshalls then conveyed Tract 1 to their son. This conveyance was subject to the BANK's mortgage, but the son did not assume the mortgage or agree to pay the indebtedness secured thereby. Thereafter, two foreclosures were filed, one for Tract 1 and another for Tract 2. Several weeks after the foreclosures were filed, the Senior Marshalls filed a Chapter 7 proceeding and the Debtors filed their Chapter 12 proceeding. In their Chapter 12 proceeding, the Debtors are proposing to pay the BANK and the ASSOCIATION the value of Tracts 1 and 2. The BANK and the ASSOCIATION filed objections to confirmation of the plan on the grounds that (1) they are not creditors of the Debtors, and (2) the Chapter 12 proceeding was not filed in good faith.

■ In support of their first objection, the BANK and the ASSOCIATION argue they are not listed as creditors in the Debtors' schedules, they have no business relationship with the Debtors whereby they had a right to payment, or a right to an equitable remedy for breach of performance, if such breach gave rise to a right to payment, and that confirmation of the plan would force them to be consensual, non-recourse lenders, as they would be compelled to restructure debt without the personal liability of the Debtors, and without their consent.[2]

The answer to the first objection is found in Section 102(2), not cited by either the Debtors or the BANK and the ASSOCIATION, which provides as follows:

"claim against the debtor" includes claim against property of the debtor; 11 U.S.C. Section 102(2).

The legislative history indicates Section 102(2) was intended to be applicable to the situation before this Court. It reads in part as follows:

Paragraph (2) specifies that "claim against the debtor" includes claim against property of the debtor. This paragraph is intended to cover nonrecourse loan agreements where the credi-

tor's only rights are against property of the debtor, and not against the debtor personally. Thus, such an agreement would give rise to a claim that would be treated as a claim against the debtor personally, for the purposes of the bankruptcy code. However, it would not entitle the holders of the claim to distribution other than from the property in which the holder had an interest.

In the case before this Court, Tract 2 is owned by the Debtors and mortgaged to the ASSOCIATION to secure the Senior Marshalls' debt, and Tract 1 is also owned by the Debtors, being conveyed by the Senior Marshalls before the filing of the bankruptcy proceedings. As the Debtors owned both tracts, they come within the scope of Section 102(2). *See: In re Dan Hixson Chevrolet Co.*, 20 B.R. 108 (Bkrtcy.N.D. Tex.1982); and *In re Ligon*, 97 B.R. 398 (Bkrtcy.N.D.Ill.1989).

The BANK and the ASSOCIATION rely on Section 101(4) of the Bankruptcy Code which defines "claim" to mean:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured;

11 U.S.C. Section 101(4).

Their contention is that they have no claim against the Debtors.

Under the Bankruptcy Code, the term "claim" is interpreted broadly. *In re Energy Co-op. Inc.*, 832 F.2d 997 (7th Cir. 1987). The Debtors' plan deals with two separate relationships arising out of two separate mortgage transactions involving Tracts 1 and 2. Therefore, their contention

---

2. The BANK and the ASSOCIATION assert that the confirmation of the plan forces them to be "consensual, non-recourse lenders". This ap-

pears to be a typographical mistake, in that the assertion should be that they are forced to be "non-consensual, non-recourse lenders".

must be considered separately as to each relationship. As to Tract 2, it is not well taken. Contrary to its underlying factual assertion, the ASSOCIATION does have a business relationship with the Debtors. As security for the loan to the Senior Marshalls, the ASSOCIATION requested and received a mortgage on Tract 2 owned by the Debtors. Although such a transaction is not a common occurrence, the basis for it is well established under state law and it is used where the facts justify it. Normally it is used where a borrower has insufficient collateral to secure a loan and a third party is willing to supply that collateral by mortgaging property without becoming fully obligated on the underlying debt. Under state law, in the event the mortgage to the ASSOCIATION was not paid, the ASSOCIATION had the right to proceed against the Debtors to foreclose the mortgage, and the Debtors had the right to protect against foreclosure by payment of the amount due on the mortgage. The ASSOCIATION had the right to demand payment from the Debtors and absent payment, the right to the equitable remedy of foreclosure. Such a relationship clearly falls within the definition of the term "claim". The fact that the ASSOCIATION could not collect a deficiency arising from the foreclosure from the Debtors does not mean that the ASSOCIATION does not have a claim against the Debtors. All the Debtors are attempting to do is·to restructure that portion of the mortgage indebtedness that they could be held responsible for through the loss of Tract 2 by foreclosure. Just because the Debtors are refusing to recognize any further liability does not mean the ASSOCIATION does not have a "claim" against them. Contrary to the assertions of the ASSOCIATION, it does have a claim against the Debtors. Finally and contrary to another of the ASSOCIATION's factual assertions, the ASSOCIATION is not being forced into a relationship against its consent. The relationship was agreed to by the ASSOCIATION at the inception of the loan.

■ Nor does the contention have merit as to Tract 1. There is nothing in the mortgage to the BANK which prevented

the Senior Marshalls from conveying Tract 1 to the Debtors, subject to the mortgage, but without the Debtors incurring personal liability. Therefore, at the time of the Chapter 12 filing the Debtors properly owned Tract 1 subject to the mortgage of the BANK. Much of the preceding analysis is applicable to Tract 1. As the Debtors owned Tract 1, the BANK had the right to foreclose Debtors' interest and the Debtors had the right to protect themselves against the foreclosure by payment of the amount due on the mortgage. Although arising out of different factual situations, the relationship involving Tract 1 is similar to the one involving Tract 2 and clearly falls within the definition of the term "claim".

■ The BANK and the ASSOCIATION's second objection is that the Chapter 12 proceeding was not filed in good faith. Because Chapter 12 is modeled after Chapter 13, Courts have looked to the definition of the term "good faith" as used in Chapter 13 for guidance in determining what is good faith under Chapter 12. *In re Zurface*, 95 B.R. 527 (Bkrtcy.S.D.Ohio 1989). In *In re Frank*, 69 B.R. 129 (Bkrtcy.C.D.Ill.1986), this Court set forth 27 factors used by other courts in determining whether Chapter 13 proceedings had been filed in good faith. Some courts have looked to see if there is a manipulation of the Bankruptcy Code which results in creditors being treated in a fundamentally unfair manner. That is the issue in this case.

As previously indicated, because the Debtors' plan deals with two separate relationships, the objection must be considered separately as to each relationship. Tract 2 is owned by the Debtors and was used as collateral for the indebtedness owed by the Senior Marshalls. The plan proposes to pay the ASSOCIATION the value of Tract 2 and thereby allow the Debtors to protect Tract 2 from foreclosure. Assuming that Tract 1 was not involved, there isn't anything in the plan which could be construed as manipulative or which indicates a fundamental unfairness in dealing with the ASSOCIATION. The ASSOCIATION originally requested and received a mortgage

on Tract 2 without requiring the Debtors to become obligated on the note. The ASSOCIATION's rights were always limited to the value of the collateral, without having the right to look to the Debtors for any deficiency. The Debtors have a perfect right to come into bankruptcy court and protect their interest in Tract 2 by paying the ASSOCIATION the value of Tract 2 and without having to concern themselves with any deficiency or unsecured portion of the ASSOCIATION's claim. The plan proposes to pay the ASSOCIATION what it bargained for when the mortgage was given, that is, the value of Tract 2.

■ However, as to Tract 1, the plan is not proposed in good faith as it aids and abets the Senior Marshalls' attempt to manipulate the Bankruptcy Code and avoid the impact of their Chapter 7 proceeding. Although the conveyance itself is proper under state law, the motivation for the conveyance is manipulative for purposes of the Bankruptcy Code. The conveyance of Tract 1 had no business purpose other than altering the debtor/creditor relationship involving the BANK. The Debtor has suggested none, and the immediacy of the relationship between the conveyance, the foreclosure and the Chapter 12 filing suggests such was the motive. It is basic to a Chapter 7 liquidation proceeding that in exchange for a discharge, a debtor's assets are used to satisfy his creditors. The Senior Marshalls, being of advanced years and not in the best of health, wanted to give up farming and rid themselves of their debt. The Senior Marshalls wanted a discharge but did not want Tract 1 liquidated to satisfy their debt to the BANK. They wanted to keep Tract 1 in the family. To achieve these goals, they first conveyed Tract 1 to their son, and then they filed their Chapter 7 proceeding, discharging themselves from all their dischargeable debt, including any unsecured claim of the BANK. By simultaneously filing their Chapter 12 proceeding the Debtors aided and abetted the Senior Marshalls' attempts at preventing the

BANK from exercising a basic right under Chapter 7 by satisfying the debt owed it through liquidation of Tract 1. Had the Senior Marshalls not first conveyed Tract 1, the BANK, being fully secured by Tract 1, would have been able to recover Tract 1 and fully satisfy the debt owed to it. In addition, the conveyance to the Debtors followed by the filing of their Chapter 12 proceeding, gives the Debtors the benefit of Tract 1 without any of its burdens, while exposing the BANK to a potential loss if the Chapter 12 plan encounters difficulty. Should that occur, and if the value of Tract 1 should decrease, or the amount of the BANK's claim should increase, the Debtors could abandon Tract 1, leaving the BANK in an undersecured position. The present value of Tract 1 is $152,000.00, the amount of the BANK's claim is $143,510.00, leaving an equity of $8,490.00. The annual payment under the plan is $17,224.11 with interest at 11.55% per annum. There is not much equity in Tract 1 which would protect the BANK should the Debtors' plan fail. After reorganization the Debtors still have a negative net worth of $6,986.00. Their plan is "thin" with only a profit of $6,640.00 after paying crop expense, payments under the plan and living expense. They have little to use to avert a plan failure in the event of continued poor farming operations. It is this manipulation of the debtor/creditor relationship, without any other business purpose, and the potential for loss which the BANK faces which makes the plan fundamentally unfair.[3]

The BANK and the ASSOCIATION make several arguments attacking the good faith nature of the plan. Some of those arguments have been previously considered and discussed by this Opinion. To insure that this opinion fully sets forth this Court's position as to each of their arguments, the following additional comments are made.

1. They assert that the borrowing relationships between the parties have been

---

**3.** It might be argued that what occurred should be considered to be legitimate planning. But the good faith standard of Chapter 12 requires that argument be rejected. Good faith can mean something more than acting in accordance with established legal rights. A debtor can be acting legally but still be manipulative and in bad faith.

severed. As indicated above as to Tract 2, that is not a correct assertion.

■ 2. They allude to the timing of the transfer of Tract 1 and the filing of the Chapter 12 proceedings in relation to the mortgage foreclosure action filed by the BANK. Examined singly, there is nothing improper in the actions of the Senior Marshalls or the Debtors, as there is nothing in the mortgage which prevented a conveyance, and it is quite common for debtors to seek protection of the bankruptcy court if foreclosure is imminent. However, when their actions are examined in the context of how they relate to each other and the BANK and the ASSOCIATION's attempts to enforce their rights, the actions of the Senior Marshalls and the Debtors become manipulative and show a lack of good faith.

■ 3. The BANK and the ASSOCIATION will suffer a significant disadvantage because of the Chapter 12 proceeding and delay in obtaining their security. This is true in any Chapter 12 proceedings. But Congress has made the decision that farmers are entitled to proceed under Chapter 12 in an attempt to save their farm. The protection for creditors is that Chapter 12 proceedings are to be quickly concluded so that creditors are not damaged by delay.

■ 4. The plan only deals with one significant secured creditor. There is nothing in the Bankruptcy Code or the decided cases which prohibit a debtor from seeking relief from one creditor.

5. Finally, the plan does not provide for unsecured payment to the ASSOCIATION. As previously pointed out, the original agreement between the Debtors and the ASSOCIATION does not provide for payment on any unsecured portion of the Senior Marshall's indebtedness. The ASSOCIATION did not bargain for that at the inception of the loan and it cannot now complain that the Debtors are not providing for payment of an unsecured portion of the loan.

For these reasons, this Court concludes that the plan has not been offered in good faith and should not be confirmed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.