**In re Bobby Gene COX and Verna Jean Cox, Debtors.**

**HERITAGE FEDERAL CREDIT UNION, as Successor in Interest to Knox County School Employees Credit Union, Plaintiff,**

**v.**

**Kimberly K. COX, Bobby Cox, Verna Cox, B.J. Bellemey, Edward E. Beasley, Dean L. Johnson, d/b/a D & E Investments, and Unknown Owners, Defendants.**

Bankruptcy No. 91–82729.
Adv. No. 91–8213.

United States Bankruptcy Court,
C.D. Illinois.

Dec. 29, 1993.

**192**

Francis Van Hooreweghe, John P. Harris, Moline, IL, for Heritage Federal Credit Union.

Barry M. Barash, Galesburg, IL, for Cox defendants.

**OPINION**

WILLIAM V. ALTENBERGER, Chief Judge.

The basic facts in this matter are not disputed. The Debtors (DEBTORS) were indebted to the KNOX COUNTY SCHOOL EMPLOYEES CREDIT UNION (CREDITOR). They wanted to borrow additional funds secured by their residence, but could not, as such additional borrowing would exceed the CREDITOR's internal lending limits. The CREDITOR's then manager suggested that they could avoid the internal lending limits by conveying title to their residence to their daughter, KIMBERLY KAYE COX (KIMBERLY), and having KIMBERLY borrow the funds.

The DEBTORS followed this suggestion and conveyed the real estate to KIMBERLY, who, in turn, made the application for a loan secured by the residence. The CREDITOR gave KIMBERLY the Federal Truth in Lending disclosures, but did not give her the Federal Truth in Lending Right of Rescission Notice. The loan was completed, with the DEBTORS receiving the loan proceeds. The DEBTORS continued to live in the residence, paid the taxes and insurance, and started making the payments on the secured loan.

Thereafter, KIMBERLY filed a Chapter 7 proceeding, and her Trustee in Bankruptcy filed a two-count complaint against the CREDITOR under the Federal Truth in Lending Act, 15 U.S.C.A. § 1601 *et seq.*, and the Truth in Lending Regulation Z.[1] Count I alleged that the annual percentage rate disclosure was inaccurate. This Court found the disclosure to be inaccurate and judgment was entered in favor of KIMBERLY's Trustee in Bankruptcy and against the CREDITOR for $1,000.00 plus reasonable attorney fees and costs. The CREDITOR filed an appeal which was subsequently dismissed. Count II sought to rescind the transaction because the CREDITOR failed to give KIMBERLY the Right of Rescission Notice. This Court held that as KIMBERLY did not

1. The Truth in Lending Regulation Z, can be found at 12 CFR, Section 226.1; 15 U.S.C.A., following Section 1700.

reside in the residence, her Trustee in Bankruptcy could not exercise the right of rescission.

The CREDITOR then brought suit in state court to foreclose the mortgage. In the foreclosure action the CREDITOR named as defendants, KIMBERLY and the DEBTORS, among others, and asked for a personal deficiency from the DEBTORS. KIMBERLY and the DEBTORS filed an answer, an affirmative defense, and a counterclaim against the CREDITOR. The affirmative defense alleges that as the DEBTORS did not sign the note they have no personal liability for any deficiency and KIMBERLY's liability for any deficiency was discharged by her bankruptcy. The counterclaim, in Count I, seeks rescission under Truth in Lending, and in Count II, also brought under Truth in Lending, seeks twice the finance charge as no disclosures were given to the DEBTORS.

The DEBTORS then filed a Chapter 13 case and had the state action removed to this Court as an adversary proceeding. The CREDITOR sought to have the state action remanded back to the state court. This Court denied the request, holding that if the DEBTORS were the true owners of the residence and were successful in getting their Chapter 13 plan confirmed, there would be no need to proceed with the state action. If not, then the state action should be remanded to the state court.

The DEBTORS' Chapter 13 plan proposes to treat the CREDITOR as unsecured, with unsecured creditors being paid zero percent, or if found to be secured to pay the CREDITOR the fair market value of the residence which is less than the amount owed on the secured loan. The CREDITOR objected to confirmation on the grounds that § 1325(b)(2) of the Bankruptcy Code, 11 U.S.C. § 1325(b)(2), prohibits the modification of a claim secured by a security interest in real estate that is the DEBTORS' principal residence, and this Court does not have jurisdiction to value the residence because it is not titled in the DEBTORS' name. The plan was conditionally confirmed, subject to

the dispute between the CREDITOR and the DEBTORS being resolved.

In the adversary proceeding the CREDITOR filed a motion to dismiss the affirmative defense and the counterclaim for rescission. A hearing was held on the issues that had to be resolved in order to determine if the Chapter 13 plan was confirmable, including those raised by the objection to confirmation, and the CREDITOR's motion to dismiss the affirmative defense and the counterclaim.[2] All issues were taken under advisement. While the adversary proceeding was pending, KIMBERLY conveyed the residence to the DEBTORS.

The unorthodox loan transaction, along with KIMBERLY and the DEBTORS' attempts through two separate bankruptcy cases to avoid paying the loan has led to a variety of issues being raised, some of which are unusual. This Court will not address every argument and rule on every issue raised by the parties. It will address only those arguments and rule on those issues which are dispositive. Prior to deciding if the Chapter 13 plan meets the standards for confirmation under § 1325 of the Bankruptcy Code, 11 U.S.C. § 1325, this Court must determine whether there is any merit to the affirmative defense to the foreclosure and the counterclaim, because if there is, the nature of the CREDITOR's claim to be dealt with by the plan would be drastically different than if there is no basis to the affirmative defense and counterclaim.

■ In Count II of the counterclaim, the DEBTORS allege a violation of Truth in Lending because they did not receive the required disclosures, and seek $1,000.00 in damages pursuant to 15 U.S.C. § 1640(a). What the DEBTORS have overlooked is that § 1640(d) prohibits a double recovery, and KIMBERLY's Trustee in Bankruptcy has already recovered for that violation. Section 1640(d) provides:

> (d) When there are multiple obligors in a consumer credit transaction or consumer lease, there shall be no more than one

---

**2.** No hearing was held on the CREDITOR's foreclosure action because if a plan was confirmed the foreclosure would become moot. If not confirmed, the foreclosure action would be remanded to the state court.

recovery of damages under subsection (a)(2) for a violation of this title.

The Seventh Circuit Court of Appeals held that § 1640(d) does limit recovery among joint obligors to a single penalty per violation and that earlier decisions interpreting the act prior to the amendment of § 1640 were no longer applicable. *Brown v. Marquette Savings and Loan Association*, 686 F.2d 608 (7th Cir.1982). Section 1640(d) prohibits DEBTORS from any further recovery.

In Count 1 of the counterclaim, KIMBERLY and the DEBTORS seek to rescind the loan transaction for the CREDITOR's alleged failure to give the required Truth in Lending Notice of Rescission pursuant to 15 U.S.C. § 1635. Section 1635 provides in part as follows:

(a) Except as otherwise provided in this section, in the case of any consumer credit transaction ... in which a security interest, ... is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this title, whichever is later ... The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

(b) When an obligor exercises his right to rescind under subsection (a), he is not liable for any finance or other charge, and any security interest given by the obligor, ... becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or other-

wise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value.

. . . .

(f) An obligor's right of rescission shall expire three years after the date of consummation of the transaction ... notwithstanding the fact that the information and forms required under this section or any other disclosures required under this chapter have not been delivered to the obligor, except ...[3]

Section 226.23(a) of Regulation Z provides in part:

(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, ...

. . . .

(3) ... If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first.

■ In KIMBERLY's Chapter 7 bankruptcy, this Court has previously ruled that she has no right of rescission as that right is applicable only to "the principal dwelling" of the person to whom credit is extended, and KIMBERLY did not reside in the residence. *In re Cox*, 118 B.R. 94 (Bkrtcy.C.D.Ill.1990). It is so basic that this previous ruling bars her action in this adversary proceeding that

---

**3.** The certain exceptions are not applicable to this case.

no authority or further discussion is required.[4]

■ There are two reasons why the DEBTORS may not rescind the transaction. Under both § 1635 of the Act and § 226.23(a)(3) of Regulation Z, the right to rescind expires three years after consummation of the loan. This three year limit has been referred to as "absolute." *King v. State of Cal.*, 784 F.2d 910 (9th Cir.1986). In this case, the loan was made on September 4, 1987, and the three year period expired in September of 1990. The CREDITOR did not file the state court foreclosure action until August 28, 1991, the DEBTORS' and KIMBERLY's answers, affirmative defense and counterclaim were filed on October 15, 1991. The DEBTORS did not file their Chapter 13 bankruptcy until November 25, 1991, and removal of the state court foreclosure action was in December of 1991. All aspects of the litigation raising the right of rescission arose well beyond the three year limit.

Many of the cases the DEBTORS rely on are not based on § 1635 but on § 1640, 15 U.S.C. § 1640, which deals generally with civil liability, and specifically with the limitations on such actions, and provides in subsection (e) as follows:

(e) Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation. This subsection does not bar a person from asserting a violation of this subchapter in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action, except as otherwise provided by State law.

The courts have recognized that the provisions of § 1635(f) and § 1640(e) are separate and distinct. *Littlefield v. Walt Flanagan & Co.*, 498 F.2d 1133 (10th Cir.1974); *Basham*

*v. Finance America Corp.*, 583 F.2d 918 (7th Cir.1978). Therefore, the cases cited by the DEBTORS are not applicable. To the extent that they would otherwise permit a debtor to exercise a right of rescission after expiration of three years, this Court is of the opinion they are incorrectly decided.

■ The other reason why the DEBTORS may not rescind is that they do not propose to comply with the obligations imposed upon them by § 1635(b) to return to the CREDITOR the property they recovered or its reasonable value. Through their Chapter 13 case they are attempting to keep the residence, rescind the mortgage, and discharge their money obligation to the CREDITOR by classifying the CREDITOR as an unsecured creditor and paying 0% to unsecured creditors.

■ Absent a Chapter 13 filing, the *sine qua non* of rescission is to put the parties into the same position they were in before the agreement was made and requires a party to give back what they got. The purpose of § 1635(b) is to restore the parties as much as possible to the status quo ante. *Abbott v. Shaffer*, 564 F.Supp. 1200 (D.Utah 1983). There are several cases which deal with the procedural aspects of § 1635(b). While a number of courts take the position that strict compliance is required, a number of courts have carved out an exception to that rule. Often cited in that regard is *Aquino v. Public Finance Consumer Discount Co.*, 606 F.Supp. 504 (E.D.Pa.1985). Discussing the exception, the court stated:

[The Creditor] acknowledges that upon notice of rescission § 1635(b) requires the creditor to return to the obligor "any money or property given as earnest money, down payment, or otherwise," but notes that upon performance of its obligations § 1635(b) then requires the obligor to tender to the creditor any property the creditor has delivered to the obligor. According to [the Creditor], [the Debtor] would

---

**4.** This Court recognizes that in the DEBTORS' case it has no jurisdiction to decide the issues between the CREDITOR and KIMBERLY. However, an explanation as to why KIMBERLY may not rescind or why the CREDITOR may not

collect a deficiency from her is necessary to establish consistency and reach a logical result at this last stage of the litigation arising out of the loan.

therefore be required to return the $5,000 loan.

[The Debtor], however, in her notice of rescission, implied that she would not comply with [the Creditor's] interpretation of § 1635(b). She stated that her only obligation under § 1635(b) was to return the car she had received in the underlying transaction. Since [the Creditor] had already repossessed the car, she felt that her obligations under § 1635(b) were satisfied.

In support of its position, [the Creditor] points to *Powers v. Sims and Levin*, 542 F.2d 1216 (4th Cir.1976), where a divided panel of the Fourth Circuit held "that when rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due." *Id.* at 1222. More specifically, the court held that a creditor could ignore its obligations under § 1635(b) when it is no longer assured of receiving its legal due from debtors who have announced their intention to make only partial restitution. *Id.* at 1221.

> Rescission is an equitable doctrine, and there is nothing in the statutory provision of the right of rescission or in § 1635(b)'s provision of the procedural steps in effecting the right of rescission which limits the power of a court of equity to circumscribe the right of rescission to avoid the perpetration of stark inequity....

*Id.*

Several courts of appeals have agreed with "the gist" of the *Powers* case and held that "[a]lthough the right to rescind is statutorily granted [by the TILA], it remains an equitable doctrine subject to equitable considerations." *Brown v. Nat. Permanent Fed. Sav. & Loan Ass'n*, 683 F.2d 444, 447–48 (D.C.Cir.1982) (cases cited therein). When equity demands it, a rescission may be conditioned upon the return of property by the obligor. *Id.*, at 447–48.

Equity also permits a creditor to offset the amount owed to it by an obligor pursuant to § 1635(b), rather than tendering those sums and awaiting a court's conditioning of rescission upon the return of property by the obligor.

> Nothing in section 1635(b) prevents the creditor from offsetting the value owed to it by the obligor from the sum it initially tenders to the obligor. Such an arrangement prevents a perfunctory exchange of funds and protects the lender from a dissipation of the money while it is in the hands of the obligor.

*Harris v. Tower Loan of Mississippi, Inc.*, 609 F.2d 120, 123 (5th Cir.), *cert. denied*, 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed.2d 30 (1980).

However, courts in their effort to insure a just result should not forget that the TILA "was passed primarily to aid the unsophisticated consumer," (citation), and that "courts have consistently recognized [that] the act is intended to balance scales thought to be weighed in favor of lenders and is thus to be liberally construed in the favor of borrowers." (citation).

Upon notice of rescission, § 1635(b) clearly places the burden of first performance on the creditor, the party who has violated the law. Under most circumstances a creditor is not permitted "to refuse to perform unless or until the obligor tenders payment." *Harris v. Tower Loan of Mississippi, Inc., supra*, at 123. Only when it is necessary to prevent a "stark inequity" or to guarantee a creditor its "legal due," should a creditor be allowed to ignore its obligations under § 1635(b).

When offsetting by a creditor will clearly protect its legal due, a creditor will not be permitted to ignore its obligations under the TILA, even if an obligor has made a technical error in demanding rescission. If a creditor feels uncomfortable about its ability to calculate properly the offset, it is free to petition the court within the twenty day statutory period to determine the rights and obligations of the parties under § 1635(b).

Very recently, the District Court for this district, decided *Rowland v. Magna Millikin Bank of Decatur, N.A.*, 812 F.Supp. 875 (C.D.Ill.1992), a Truth in Lending case in-

volving the rescission of a transaction for the installation of windows in the debtor's home, after the debtors had received a discharge in bankruptcy. After determining that the debtors were entitled to rescind, the court turned to the question of damages:

The Court's decision to grant Plaintiffs' rescission request warrants further discussion. The effects or rescission are governed by 15 U.S.C. § 1635(b). Having found that Plaintiffs are entitled to a rescission, the security interest automatically becomes void. *Id.*, and the Defendant must "take any action necessary to reflect the termination of the security interest." 12 C.F.R. § 226.23(d)(2). In the case at bar, the Defendant has released the mortgage, thus fulfilling the above requirement of 15 U.S.C. § 1635(b).

Another consequence of rescission is that Plaintiffs are no longer liable under the terms of the transaction. Thus, Plaintiffs need not pay "any finance or other charge...." *Id.* Furthermore, the regulations dictate that "[w]ithin 20 days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction...." 12 C.F.R. § 226.23(d)(2). Rescission, however, is an equitable remedy, and "the court may condition the return of monies to the debtor upon the return of property to the creditor." (citations.)

In a case similar to this in which a consumer received siding that could not be returned, the court held that the consumers were required to "tender the reasonable value of the property they received since they ... [could not] give back what they actually received...." *Rudisell v. Fifth Third Bank,* 622 F.2d [243] at 254 [ (6th Cir.1980) ]. On this matter, the regulations provide that "the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value." 12 C.F.R. § 1635(d)(3)....

In the case at bar, it would be equitable for Plaintiffs to pay the reasonable value of the windows installed at their home. Plaintiffs argue, however, that because

they filed for bankruptcy on January 18, 1991, and were discharged on June 17, 1991, (Case No. 91–80120, Bankr.C.D.Ill.), they no longer need to tender the value of the windows as a condition of rescission. Plaintiffs cite several cases in support of their position, but in no way do these cases countenance the inequitable position taken by Plaintiffs. (citations.)

The court concluded that the Plaintiffs were liable for the reasonable value of the windows.

In the present Chapter 13 case, it is clear from the counterclaim the DEBTORS never intended to comply with § 1635(b) and restore the status quo ante. They want to keep the residence, void the mortgage, obtain a refund of all charges or interest, and not repay the loan by discharging it as an unsecured debt. There are no other terms to describe their approach other than to describe it as one based on greed and manipulation, as they are attempting to keep the residence without paying for it. As the DEBTORS are not proposing to repay the loan, they may not rescind the loan.

■ This Court will now turn its attention to the affirmative defense to the foreclosure, that neither KIMBERLY nor the DEBTORS are liable for any deficiency. After KIMBERLY filed her Chapter 7 bankruptcy, the CREDITOR was within its rights to file a state foreclosure action and join as defendants KIMBERLY, who signed the mortgage, and the DEBTORS, who were in possession. What it could not do was recover a deficiency from KIMBERLY as she had received a discharge in bankruptcy. The affirmative defense as to KIMBERLY is extraneous as it is raised in response to a foreclosure complaint which doesn't ask for deficiency relief from her.[5]

However, the foreclosure complaint does seek to recover a deficiency from the DEBTORS. This is odd relief to request, as the DEBTORS did not sign the note and mortgage. The oddity continues for even though the affirmative defense is that the DEBTORS did not sign the note, their Chapter 13 plan treats the CREDITOR as a creditor.

---

**5.** See Footnote # 4 above.

These oddities are easily explainable. The loan was in reality for the benefit of the DEBTORS. Prior to the loan the DEBTORS resided in the residence. The loan was structured in the manner that it was because the DEBTORS did not qualify for a loan. Both the CREDITOR and the DEBTORS participated in the charade. After the loan was made, the DEBTORS continued to reside in the residence and they made the loan payments. The parties' actions reflect the true nature of the transaction. In reality the residence belonged to the DEBTORS. The legal theory supporting their position is one of a resulting trust. *See Matter of Torrez*, 63 B.R. 751 (9th Cir.BAP 1986). When the CREDITOR filed the foreclosure action it obviously was trying to claim a deficiency against the true party in interest, the DEBTORS. The equally obvious response of the DEBTORS in the state court was to plead the affirmative defense. Then when the DEBTORS decided to try to save their residence they filed the Chapter 13 case and had the foreclosure removed to this Court.

In this Court the relevant issue is not whether the DEBTORS are liable for a deficiency. The relevant issue is whether the DEBTORS can include the loan transaction and the CREDITOR in their Chapter 13 proceeding. They can. The starting point is § 101 of the Bankruptcy Code. 11 U.S.C. § 101. Section 101(10) defines "creditor" as an entity that has a "claim against the debtor." Section 101(5) defines "claim" as

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

Section 102(2) defines "claim against the debtor" to include a claim "against property of the debtor". *See In re Marshall*, 108 B.R. 195 (Bkrtcy.C.D.Ill.1989).

■ In this case, the CREDITOR has a claim against the DEBTORS as it has a claim against their property, their residence. The CREDITOR has available to it the remedy of foreclosure which develops into a right of payment because if the DEBTORS do not pay they will lose their residence through the foreclosure. Therefore, the CREDITOR can be included in their Chapter 13 proceeding.

The next step is for this Court to determine if the plan is confirmable as to the CREDITOR. It is not. Based on the alleged Truth in Lending violation the DEBTORS' plan proposes to treat the CREDITOR as unsecured. As this Court has held against the DEBTORS on that point, the CREDITOR has to be treated as secured.

■ The plan goes on to provide that if the mortgage is found to be valid, the DEBTORS intend to pay the CREDITOR the fair market value of the residence. There was no testimony concerning the fair market value, but it is safe to assume that the DEBTORS contend the fair market value is less than the amount owed to the Credit Union.[6] This treatment of the CREDITOR's claim is an improper attempt to bifurcate the claim contrary to § 1325 of the Bankruptcy Code, 11 U.S.C. § 1325, and the holding in *Nobelman v. American Sav. Bank*, —— U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). To be confirmable the plan must provide for payment of 100% of the CREDITOR's secured claim.

There is one last loose end that needs attention. The confirmation of a plan will stay the state foreclosure action as to the DEBTORS. What is its status as to KIM-

---

**6.** The CREDITOR filed two claims. The first claim was filed as a secured claim for $21,415.00 on January 21, 1992. On July 26, 1993, the CREDITOR filed a second claim for $24,415.00 which is shown as being unsecured for $24,-115.00 with an asterisk indicating subject to judge's ruling on the adversary case pending, and $300.00 secured. This Court is not exactly sure why these claims were filed in the manner that they were. Based upon the hearing, this Court believes that the CREDITOR does contend it is holding a secured claim. Apparently the $300.00 secured claim relates to different collateral, a vehicle, and the CREDITOR wanted to be on record as having filed an appropriate claim regardless of which way this Court would rule.

BERLY?[7] If the DEBTORS pay the CREDITOR in full under the plan, there will be no need for the foreclosure. If they fail to do so, the foreclosure can be remanded to state court upon dismissal of the Chapter 13 case. Therefore, as to KIMBERLY the foreclosure should be stayed pursuant to § 1301 of the Bankruptcy Code. 11 U.S.C. § 1301.

For these reasons,

1. The CREDITOR's objection to confirmation should be allowed, and the DEBTORS should be given twenty-one (21) days within which to amend their plan to be consistent with this Opinion. If they fail to do so, their Chapter 13 case will be dismissed and the mortgage foreclosure action will be remanded to state court for further proceedings in that court. If they do so, the mortgage foreclosure action will be stayed as to both the DEBTORS and KIMBERLY.

2. The motion to dismiss the affirmative defense and counterclaim should be allowed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.