Lloyd R. **LITTLE**, Plaintiff,

v.

**BANK OF AMERICA, N.A.**, Defendant.

**Civil Action No. 2:10cv311.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 3, 2011.

Henry W. McLaughlin, III, The Law Office of Henry McLaughlin, P.C., Richmond, VA, for Plaintiff.

Georgianna Gaines Ramsey, Hunton & Williams LLP, Norfolk, VA, for Defendant.

## MEMORANDUM OPINION AND ORDER

RAYMOND A. JACKSON, District Judge.

Before the Court is Defendant Bank of America, N.A.'s Motion to Dismiss Plaintiff's Complaint, pursuant to Fed.R.Civ.P. 12(b)(6). This matter has been fully briefed by both parties and is ripe for judicial determination. For the reasons stated herein, Defendant's Motion to Dismiss for failure to state a claim upon which relief may be granted is **GRANTED** in part and **DENIED** in part.

## I. FACTUAL AND PROCEDURAL HISTORY

On June 29, 2010, Plaintiff, Lloyd R. Little ("Little"), filed a Complaint against Defendant, Bank of America, N.A. ("BOA"), under the Truth–in–Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, seeking, *inter alia,* a declaratory judgment that he sent a valid notice of rescission of her credit transaction, pursuant to 15 U.S.C. §§ 1635 and 1641(c) and reasonable attorney's fees, pursuant to 15 U.S.C. § 1640(a)(3).

In his Complaint, Little alleges that, on October 25, 2007, he and his wife, Gloria Little, (collectively, "the Littles") refinanced their primary residence with Nationwide Lending Corporation ("Nationwide"). Compl. ¶ 6. The credit transaction between the Littles and Nationwide was evidenced by a note in the amount of $393,300. Compl. ¶ 6. The note was secured by a deed of trust signed by the Littles on October 25, 2007. Compl. ¶ 6. Nationwide also provided the Littles with a disclosure statement which contained, *inter alia,* a finance charge in the amount of $649,766.94, and a document entitled "Notice of Right to Cancel." Compl. ¶¶ 8, 9, 10. Additionally, Nationwide provided the Littles with closing instructions, indicating that the loan was required to be recorded in first lien position on or prior to disbursement. Compl. ¶¶ 12, 19.

According to Little, because the loan could not be recorded unless notarized, Nationwide's requirement that the loan be recorded, necessarily required that the Littles pay for the service of a notary public. Compl. ¶ 20. Thus, Little alleges that Nationwide imposed a $250 notary fee as a condition of going forward with the credit transaction. Compl. ¶ 18. However, the disclosure statement indicated that Nationwide had excluded the $250 notary fee from the computation of the finance

charge. Compl. ¶ 11. Additionally, Little alleges that the prevailing local rate for a notary fee at the time of the credit transaction was less than $50, such that Nationwide inflated the imposed notary fee by at least $200. Compl. ¶ 24. Thus, Little claims that Nationwide materially underdisclosed the finance charge by excluding the $250 notary fee and charging a hidden finance charge of $200. Compl. ¶ 23C. Furthermore, Little claims that because Nationwide failed to indicate a deadline date for rescission, the Littles were not adequately notified of their right to rescind the credit transaction. Compl. ¶ 23A. Little also alleges that the disclosure statement failed to disclose the dates of the payments as required under TILA. Compl. ¶ 23B.

The Littles fell into arrears on the note with Nationwide. Compl. ¶ 24. Subsequently, Nationwide assigned the note to BOA, which instructed a substitute trustee to foreclose on the Littles' home. Compl. ¶¶ 25-26. BOA scheduled a foreclosure auction of the home for June 29, 2010. Compl. ¶ 26. On June 25, 2010, Little, by counsel, sent a notice of rescission to Nationwide and BOA. Compl. ¶ 27. On June 28, 2010, Little, by counsel, sent a second notice of rescission to Nationwide and BOA. Compl. ¶ 27. Little asserts that he would be able to tender the amount necessary for TILA rescission, either through refinancing or, as a last resort, by sale of the home. Compl. ¶ 30. Little is unaware of the exact amount he would be required to tender, but believes that the amount is approximately $325,000 or less. Compl. ¶ 30.

On July 30, 2010, BOA filed the instant Motion to Dismiss Plaintiff's Complaint. Little filed a Memorandum in Opposition to the Motion on August 13, 2010 and BOA filed a Reply to Plaintiff's Memorandum on August 19, 2010. Accordingly, this matter is now ripe for judicial determination.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers,* 762 F.2d 30, 31 (4th Cir.1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir.2000). A complaint need not contain "detailed factual allegations" in order to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008). This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal,* 129 S.Ct. at 1949, and *Twombly,* 550 U.S. at 557, 127 S.Ct. 1955).

## III. DISCUSSION

Defendant, BOA, asserts that Plaintiff's Complaint should be dismissed for failure

to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). BOA sets forth five bases for its contention. First, BOA charges that Little failed to state a claim for TILA rescission because his allegation that Nationwide failed to provide notice of his right to cancel is legally implausible. Def.'s Mem. Supp. at 8–10. Second, BOA asserts that Little's claim that Nationwide failed to disclose the payment dates should be dismissed because the disclosure statement properly and reasonably provided the payment schedule. Def.'s Mem. Supp. at 10–11. Third, BOA contends that Little failed to plead sufficient facts to support his claim that the $250 notary fee was a hidden finance charge. Def.'s Mem. Supp. at 11–15. Specifically, BOA alleges that, because Nationwide did not impose the notary fee on the Littles, the notary fee cannot be considered a finance charge under TILA. Def.'s Mem. Supp. at 13–14; *see* 15 U.S.C. § 1605(a) ("The finance charge shall not include fees and amounts imposed by third party closing agents ... if the creditor does not require the imposition of the charges or the services provided and does not retain the charges."). Further, BOA claims that Little failed to plead sufficient facts to support his allegation that the notary fee was not bona fide and reasonable. Def.'s Mem. Supp. at 14–15. Fourth, BOA argues that Little has not adequately pled that he has the ability to tender the borrowed funds back to BOA, as required by TILA. Def.'s Mem. Supp. at 15–16. Finally, BOA claims that Little cannot state a claim for attorney's fees against an assignee of the note, where the TILA violation is not apparent on the face of the disclosure statement, and the particular violations alleged by Little are not facially apparent. Def.'s Mem. Supp. at 16–17. Before addressing the parties' arguments, the Court will first examine the statutory text and history of TILA.

Congress enacted TILA in order to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). Accordingly, TILA and its implementing regulation, 12 C.F.R. § 226 ("Regulation Z"), require creditors to "clearly and conspicuously" disclose certain information pertaining to credit transactions. *See* 15 U.S.C. §§ 1632(a), 1635(a). TILA provides individuals with a civil cause of action for damages against any creditor who fails to make the required disclosures under the Act, *see* 15 U.S.C. § 1640(a)(1), in addition to providing for the costs of the action and a reasonable attorney's fee where the action is successful, 15 U.S.C. § 1640(a)(3).

Furthermore, where a credit transaction is secured by an interest in property that is used as the principal dwelling of the person to whom credit was extended, the obligor enjoys a right to rescind the transaction until midnight on the third business day following the latter of either consummation of the transaction or delivery of the information, rescission forms, and material disclosures. 15 U.S.C. § 1635(a). However, where the creditor fails to provide the required information and disclosures, including disclosure of the right to rescind, the right to rescind is extended from three days to three years following the earlier of either consummation of the transaction or the sale of the property. 15 U.S.C. § 1635(f). Plaintiff has raised both a cause of action for a reasonable attorney's fee, pursuant to § 1640(a)(3), and a right of rescission, pursuant to § 1635. The Court now turns to the specific arguments BOA has asserted.

### A. Notice of the Right to Rescind

BOA first asserts that Little cannot state a valid claim for rescission based on

his contention that Nationwide failed to provide him with notice of his right to rescind. Specifically, BOA argues that Little's claim that he had no notice of his right to rescind is implausible because Little did, in fact receive, a "Notice of Right to Cancel," which clearly and conspicuously provided the rescission deadline. Def.'s Mem. Supp. at 9. In response, Little argues that TILA requires the lender to disclose the date that the rescission period expires, and that the document entitled "Notice of Right to Cancel" failed to provide that information. Pl.'s Mem. Opp'n at 9–11. However, BOA dismisses Little's response, claiming that it contains factual allegations which were not included in the original Complaint, which specified that it was the "General Closing Instructions," and not the "Notice of Right to Cancel," which failed to provide a deadline for rescission. Def.'s Reply at 3.

■ Before addressing the merits of BOA's argument, the Court notes that there is some discrepancy in the Complaint about which document failed to provide the rescission deadline. In his Complaint, Little states that Nationwide failed to provide notice of his right to rescind because Exhibit F, which Little attached to the Complaint, did not include the deadline date for rescission. Compl. ¶ 23A. Exhibit F is a document entitled "General Closing Instructions." Compl. at Ex. F.[1] The "General Closing Instructions" makes no mention of a deadline for rescission and in fact, only refers to rescission of the loan to the extent that it requires the creditor to provide the borrower with a "Notice of Right to Cancel" which should be "properly completed (including all dates)." *Id.* Little

also attached the "Notice of Right to Cancel" to the Complaint as Exhibit D. *See* Compl. ¶ 9. Unlike the "General Closing Instructions," the "Notice of Right to Cancel" contains the blank space that Little referenced where Nationwide allegedly failed to include the deadline for rescission. Compl. at Ex. D. Given the context provided in the Complaint and a close examination of both Exhibits D and F, as well as the arguments Little advanced in his brief, the Court concludes that Little inadvertently referred to Exhibit F, the "General Closing Instructions," when he intended to refer to Exhibit D, the "Notice of Right to Rescind." Thus, because Plaintiff seems to have mistakenly referred to the incorrect exhibit in advancing his argument, the Court provides Plaintiff with leave to amend paragraph 23A of his Complaint to reflect the correct exhibit reference. Furthermore, for the purposes of considering the arguments that Defendant raises, the Court will presume that Plaintiff's claim centers around a failure to disclose found in the "Notice of Right to Cancel," rather than in the "General Closing Instructions."

TILA requires that creditors "clearly and conspicuously disclose" to obligors, their right to rescind the credit transaction in any transaction in which a security interest is retained in the obligor's principal dwelling. 15 U.S.C. § 1635(a). Furthermore, the creditor is also required to provide the obligor with "appropriate forms" for the obligor to exercise his right to rescind. *Id.* The notice of the right to rescind shall be a separate document which "clearly and conspicuously" discloses, *inter alia,* the date the rescission

1. Courts considering a Rule 12(b)(6) motion, may rely upon not only the complaint's allegations, but also those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers,* 762 F.2d 30, 31 (4th Cir.1985); *see also Davis v. George Mason Univ.,* 395 F.Supp.2d 331,

335 (E.D.Va.2005) ("[W]hen a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss the complaint and the Court may consider the same without converting the motion to one for summary judgment.").

period expires. 12 C.F.R. § 226.23(b). In order to satisfy TILA's disclosure requirements, the creditor is required to provide either the appropriate model form or a substantially similar notice. 12 C.F.R. § 226.23(b)(2). The model form provides:

### NOTICE OF RIGHT TO CANCEL

You are entering into a transaction that will result in a [mortgage/lien/security interest] [on/in] your home. You have a legal right under federal law to cancel this transaction, without cost, within three business days from whichever of the following events occurs last:

(1) the date of the transaction, which is _____; or

(2) the date you received your Truth in Lending disclosures; or

(3) the date you received this notice of your right to cancel.

. . .

If you decide to cancel this transaction, you may do so by notifying us in writing, at

(creditor's name and business address).

. . .

If you cancel by mail or telegram, you must send the notice no later than midnight of _____ (or midnight of the third business day following the latest of the three events listed above). If you send or deliver your written notice to cancel some other way, it must be delivered to the above address no later than that time.

### I WISH TO CANCEL

_____    _____

Consumer's Signature    Date

■ In this case, Little alleges that Nationwide failed to complete the second blank on the model form (the rescission deadline) and thus, failed to comply with the disclosure requirements under TILA. The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has held that even a technical violation of the statute can give rise to liability under TILA. *See Mars v. Spartanburg Chrysler Plymouth, Inc.,* 713 F.2d 65, 67 (4th Cir. 1983) ("To insure that the consumer is protected, as Congress envisioned, requires that the provisions of the Act and the regulations implementing it be absolutely complied with and strictly enforced.... [Thus] 'a technical violation of the Act [is] sufficient to subject [the creditor] to civil liability under § 1640.'"). Furthermore, minor violations of the TILA disclosure requirements may impose liability even where the borrower "was not misled and was given a meaningful and correct disclosure of crucial credit terms." *See Huff v. Stewart–Gwinn Furniture Co.,* 713 F.2d 67, 69 (4th Cir.1983). Although the Fourth Circuit has not specifically addressed the precise issue Little has raised, other circuits to address the issue have found that the omission of the rescission deadline from the notice of right to rescind is a technical violation which gives rise to liability under TILA. *See, e.g., Semar v. Platte Valley Fed. Sav. & Loan Ass'n,* 791 F.2d 699, 704–05 (9th Cir.1986); *Williamson v. Lafferty,* 698 F.2d 767, 768 (5th Cir.1983) ("Under § 1635(a) of the TILA, failure properly to complete the right to rescission form automatically violates the Act...."). *But see, e.g., Melfi v. WMC Mortgage Corp.,* 568 F.3d 309, 312–13 (1st Cir.2009) (rejecting the reasoning in *Semar* and *Williamson* as "elderly" and holding that "technical deficiencies do not matter if the borrower receives a notice that effectively gives him notice as to the final date for rescission and has the three full days to act.").

■ BOA urges this Court to adopt the reasoning set forth in *Melfi* to determine that the appropriate inquiry is "whether a reasonable borrower would understand the Notice in the manner that Plaintiff describes." Def.'s Reply at 4. However, the reasoning in *Melfi* is contrary to the

Fourth Circuit's mandate that the disclosure requirements be "absolutely complied with and strictly enforced." *See Mars,* 713 F.2d at 67; *see also Rucker v. Sheehy Alexandria, Inc.,* 228 F.Supp.2d .711, 717 (E.D.Va.2002) ("TILA is a technical statute, and should be strictly enforced."). This strict liability standard "seeks to shift the risk of uncertainty regarding the terms of a credit transaction from the borrower to the lender." *Watkins v. Suntrust Mortg., Inc.,* No. 3:10–CV–98, 2010 WL 2812910, at *3 (E.D.Va. July 15, 2010); *see also Williamson,* 698 F.2d at 769 n. 3 ("[T]he precise purpose of requiring the creditor to fill in the date is to prevent the customer from having to calculate three business days."). While the Fourth Circuit has recognized that the strict liability standard does not imply that TILA should not be "reasonably construed and equitably applied," *Am. Mortg. Network, Inc. v. Shelton,* 486 F.3d 815, 819 n. 4 (4th Cir. 2007), it has not specifically rejected the standard as set forth in *Mars* or adopted the "effective notice" reasoning espoused in *Melfi.* Accordingly, this Court finds that BOA's alleged failure to state the rescission deadline in the "Notice of Right to Cancel" is sufficient to establish a violation under TILA.

Furthermore, BOA's argument that the second line on the "Notice of Right to Cancel" was not, in fact, left blank is not appropriate at this stage of the litigation. Although the documentation that BOA produced in support of its argument clearly raises a genuine issue of material fact as to whether the notice contained the required date, in deciding a Motion to Dismiss under Rule 12(b)(6), the Court must accept Plaintiff's allegation that Nationwide left the line blank as true. *See Erickson,* 551 U.S. at 94, 127 S.Ct. 2197. Furthermore, while the signed version of the "Notice of Right to Cancel" BOA produced may be compelling evidence that Nationwide actually provided the rescission deadline at the time of signing, this Court finds it inappropriate to reach this question at such an early stage in the litigation. *See Twombly,* 550 U.S. at 556, 127 S.Ct. 1955.

Accordingly, the Court finds that Plaintiff has adequately stated a claim for rescission based on his allegations that the "Notice of Right to Cancel" failed to provide the rescission deadline. Thus, Defendant BOA's Motion to Dismiss this claim is **DENIED.** However, Plaintiff is granted leave to amend paragraph 23A of his Complaint to reflect that the exhibit referred to is Exhibit D, the "Notice of Right to Cancel," rather than Exhibit F, the "General Closing Instructions."

## B. Failure to Disclose the Payment Schedule

BOA now alleges that Little's claim that Nationwide failed to disclose the payment dates should be dismissed because the disclosure statement properly and reasonably provided the payment schedule. Def.'s Mem. Supp. at 10–11. To the contrary, Little asserts that the disclosure statement that Nationwide provided indicated that the first 60 payments were all due on December 1, 2007 and that the next 91 payments were all due on December 1, 2012, and the next 208 payments were all due on July 1, 2020. Compl. ¶ 23B. Little further claims that even a technical violation, such as that alleged in his complaint, can impose liability on a lender. Pl.'s Mem. Opp'n at 17. BOA counters that no reasonable consumer would construe the payment schedule as Little suggests in his Complaint. Def.'s Reply at 8.

In addition to the right to rescind, among the material disclosures that the creditor is required to make under TILA, is the disclosure of "the total of payments, the number and amount of payments, the due dates or periods of payments sched-

uled to repay the indebtedness." 15 U.S.C. § 1602(u); *see also* 12 C.F.R. § 226.18(g) (defining the "payment schedule" as "[t]he number, amounts, and timing of payments scheduled to repay the obligation"). In this case, Nationwide provided the Littles with a disclosure statement which contained three columns which included the number of payments, the amount of the payments, and when the payments were to be due. *See* Compl. at Ex. C. Little does not assert that Nationwide failed to provide this document, but rather appears to argue that Nationwide did not strictly comply with TILA because the document failed to either list the specific payment dates or specify the interval in which the payments would be due. Pl.'s Mem. Opp'n at 17. However, a review of the disclosure statement indicates that Nationwide included under the column entitled "When Payments Are Due," a notation that the payments were due "Monthly Beginning" and then proceeded to list the different dates in which the payments were due. Compl. at Ex. C.

▇▇▇ While the Fourth Circuit has adhered to an objective standard in determining whether a creditor has complied with the notice provisions of TILA, *see Mars,* 713 F.2d at 67, TILA's disclosure requirements should nevertheless "be reasonably construed and equitably applied," *Shelton,* 486 F.3d at 819 n. 4. Unlike the complete failure to state the rescission deadline addressed above, any reasonable interpretation of the disclosure statement would reveal that Nationwide complied with required payment disclosures. As BOA points out, any reasonable consumer would interpret the disclosure statement in this case to require that the borrow repay the loan in monthly installments, in the amounts listed, beginning on the specific dates provided in the statement. Furthermore, where, as here, the disclosure statement specifically indicates that the payments are due "monthly begin-

ning," Nationwide satisfied the requirement that the lender disclose the "periods of payments scheduled to repay the indebtedness." *See* 15 U.S.C. § 1602(u). *Cf. Larrabee v. Bank of Am., N.A.,* 714 F.Supp.2d 562, 567–68 (E.D.Va.2010) (rejecting Plaintiff's argument that the disclosure statement failed to adequately disclose the payment schedule, even where the lender failed to specify that payments were due in monthly intervals).

For the reasons outlined above, the Court finds that, where the disclosure statement specifically indicated that payments were due in monthly intervals, Nationwide complied with its disclosure requirements under TILA. Thus, Plaintiff has failed to state a claim against BOA based on a violation of TILA for failure to adequately disclose the payment schedule. Accordingly, Defendant BOA's Motion to Dismiss this claim is **GRANTED.**

## C. Under-disclosure of the Finance Charge

BOA next asserts that Little cannot state a claim for rescission under TILA based on his contention that Nationwide under-disclosed the finance charge. BOA bases its argument on two grounds. First, BOA maintains that Nationwide did not impose the notary fee on the Littles and thus, this fee was properly excluded from the definition of a finance charge under TILA. Def.'s Mem. Supp. at 13–14. Additionally, BOA states that even if the notary fee were a finance charge, as that term is defined under TILA, Little failed to plead sufficient facts to support his allegation that the notary fee was not bona fide and reasonable, and therefore not exempted from the finance charge computation. Def.'s Mem. Supp. at 14–15. In response, Little argues that Nationwide imposed the notary fee because notarization was required in order for the security interest to

be recorded, and Nationwide required recording as a condition of entering into the credit transaction. Pl.'s Mem. Opp'n at 12. Furthermore, Little claims Nationwide could not properly exclude the notary fee from the finance charge because the $250 fee was unreasonable in light of the local market rate for notary service. Pl.'s Mem. Opp'n at 14. BOA counters that Virginia state law, and not Nationwide, requires that recorded loans be notarized. Def.'s Reply at 6.

Disclosure of the "finance charge" to be imposed on the obligor is one of the required material disclosures under TILA. 15 U.S.C. § 1632(a). The "finance charge," as that term is defined under TILA, is "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." 15 U.S.C. § 1605(a); 12 C.F.R. § 226.4(a). Generally, the finance charge does not include fees imposed by third parties where the creditor "does not require the imposition of the charges or the services provided and does not retain the charges." 15 U.S.C. § 1605(a). However, the finance charge shall include third party fees where "the creditor: (i) requires the use of a third party as a condition of or an incident to the extension of credit, even if the consumer can choose the third party; or (ii) retains a portion of the third-party charge, to the extent of the portion retained." 12 C.F.R. § 226.4(a)(1).

■ Where a credit transaction is secured by an interest in real property, notary fees are specifically exempted from the computation of the finance charge. 15 U.S.C. § 1605(e)(4); see also 12 C.F.R. § 226.4(c) ("The following charges are not finance charges: ... The following fees in a transaction secured by real property or in a residential mortgage transaction, if the fees are bona fide and reasonable in

amount: (iii) Notary, and credit report fees."). However, such notary fees are only exempted from inclusion in the finance charge where they are "bona fide and reasonable in amount." 12 C.F.R. § 226.4(c)(7). A fee is reasonable where it is comparable to "the prevailing practices of the industry in the locality." *King v. Deutsche Bank Nat. Trust Co.*, No. 3:10–CV–41, 2010 WL 3745599, at *5 (E.D.Va. Sept. 21, 2010) (quoting *Hudson v. Bank of Am.*, No. 3:09–CV–462, 2010 WL 2365588, at *3 (E.D.Va. June 11, 2010)); see also *Inge v. Rock Fin. Corp.*, 388 F.3d 930, 940 (6th Cir.2004) ("The relevant inquiry is not whether [the lender] has used the cheapest third-party service available to it anywhere, but whether the fee is reasonable given the prevailing practices in the relevant market," meaning reasonable given "the prevailing practices of the industry in the locality.").

■ In this case, Little alleges that the $250 notary fee was unreasonable based upon his assertion that the prevailing local rate for a notary fee at the time of the credit transaction was less than $50. Compl. ¶ 21. However, Little does not allege any facts sufficient to support his legal contention that the $250 notary fee was unreasonable. See *Eastern Shore Mkts.*, 213 F.3d at 180 (noting that when considering a 12(b)(6) motion, the court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments."). As the Court recognized in both *Hudson* and *King,* such conclusory allegations merely establish that Little may have paid more for the notarization service than another borrower might have, not that the fee was unreasonable. See *Hudson,* 2010 WL 2365588, at *5; *King,* 2010 WL 3745599, at *6. Thus, Little's claim that the $250 notary fee was unreasonable, and thus should not have

been excluded from the finance charge, is merely a "naked assertion" of wrongdoing "without some further factual enhancement" to nudge the Complaint across the "line between possibility and plausibility." *King*, 2010 WL 3745599, at *6 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). Because the Court finds that Little's Complaint fails to adequately plead that the notary fee was unreasonable, the Court declines to address BOA's argument that Nationwide did not impose the notary fee.

For the reasons outlined above, the Court finds that Plaintiff has failed to state a claim against BOA based on a violation of TILA for under-disclosure of the finance charge. Accordingly, Defendant BOA's Motion to Dismiss this claim is **GRANTED.**

### D. Plaintiff's Ability to Tender Full Payment

BOA also contends that Little's entire claim for rescission should be dismissed as he has failed to sufficiently plead that he has or will tender the borrowed funds back to BOA. Def.'s Mem. Supp. at 15–16. Specifically, BOA argues that Little fails to assert any concrete steps that he has taken to secure funding to satisfy his tender obligations. Def.'s Mem. Supp. at 16. In response, Little relies on the fact that he has pled that the home in which the security interest was granted is worth more than what he will be required to tender in rescission and that he stands ready to sell his home to satisfy the tender requirements. Pl.'s Mem. Opp'n at 20–21.

▉▉▉ Rescission seeks to restore the parties involved in the credit transaction to the "status quo ante." *Shelton*, 486 F.3d at 820. "[W]hen rescission is attempted under circumstances which would deprive the lender of its legal due, the attempted rescission will not be judicially enforced unless it is so conditioned that the lender will be assured of receiving its legal due."

*Id.* (quoting *Powers v. Sims & Levin*, 542 F.2d 1216, 1222 (4th Cir.1976)). In other words, rescission should not be granted where it is clear that the obligor cannot or will not tender the borrowed funds to the creditor. *Id.* ("Congress did not intend to require a lender to relinquish its security interest when it is now known that the borrowers did not intend and were not prepared to tender restitution of the funds expended by the lender in discharging the prior obligations of the borrowers." (quoting *Powers*, 542 F.2d at 1221)). Thus where an obligor seeks rescission of a credit transaction and the trial judge determines that she is "unable to tender the loan proceeds, the remedy of unconditional rescission [i]s inappropriate." *Moore v. Wells Fargo Bank, N.A.*, 597 F.Supp.2d 612, 616 (E.D.Va.2009) (quoting *Shelton*, 486 F.3d at 821).

▉▉▉ In order to survive a Rule 12(b)(6) motion to dismiss, the plaintiff asserting the right to rescission must allege sufficient facts that, when viewed in the light most favorable to plaintiff, establish the plausibility that he is able to tender the borrowed funds. *See Twombly*, 550 U.S. at 570, 127 S.Ct. 1955; *Cheche v. Wittstat Title & Escrow Co.*, 723 F.Supp.2d 851, 858–59 (E.D.Va.2010). In *Moore*, the Court rejected the notion that a plaintiff seeking rescission must "conclusively establish her ability to tender through her Complaint," holding, instead, that a court considering a Rule 12(b)(6) motion to dismiss should not engage in a factual determination as to the plaintiff's actual ability to tender. 597 F.Supp.2d at 616–17. Despite Defendant's contentions that the state of the housing market rendered Plaintiff's ability to tender speculative and unlikely, the *Moore* Court determined that Plaintiff's assertions that she would be able to tender the loan proceeds by either

refinancing or sale of her home were sufficient to survive the motion to dismiss. *Id.*

Similar to the plaintiff in *Moore,* Little asserts that he "would be able to tender the amount necessary for TILA rescission, either through refinancing or, as a last resort, by sale of the home." Compl. ¶ 30. Further, Little and his wife affirm that they are willing and able to sell their home and to use the net proceeds from such sale in order to satisfy the TILA tender requirement. *Id.* Nevertheless, BOA contends that Little's assertions are merely speculative for two reasons. First, BOA points to the fact that Little has not indicated that he has refinancing ready or that he would qualify for refinancing again. Def.'s Mem. Supp. at 16. Particularly, BOA points out that because Little is currently in default on his mortgage, he would be unable to repay the net loan proceeds from refinancing. *Id.* Second, BOA asserts that because Little is unaware of the amount he owes and would be required to tender, his ability to tender is merely speculative. *Id.*

Though Plaintiff's practical inability to refinance may be relevant to the factual inquiry as to his actual ability to tender, such an assessment is not appropriate at the 12(b)(6) stage. *See Moore,* 597 F.Supp.2d at 617. At this stage of the litigation, the Court must accept Plaintiff's factual allegations as true. *Id.; see also Erickson,* 551 U.S. at 94, 127 S.Ct. 2197. Thus, while Little's inability to secure refinancing may be relevant at a later phase in the litigation, it cannot be the basis for sustaining a motion to dismiss under Rule 12(b)(6). *See Moore,* 597 F.Supp.2d at 616 ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations." (quoting *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955)). Furthermore, the Court must consider the facts alleged in the Complaint in the light most favorable to Plaintiff. In his Com-

plaint, Little asserts that he "would be able to tender" the borrowed funds. Compl. ¶ 30. Although Little's language regarding his ability to tender may not be as strong as the "can and will" language espoused in the plaintiff's complaint in *Moore,* the Court cannot conclude that it is so speculative as to render his assertion implausible. *Compare Moore,* 597 F.Supp.2d at 616 (finding Plaintiff's allegations that she "can and will tender the loan proceeds" sufficient to defeat Defendant's 12(b)(6) motion), *with Cheche,* 723 F.Supp.2d at 858–59 (holding that where Plaintiff alleged only that she "might be able to" tender payment rather than that she "can and will" tender, she failed to "nudge [her] claim [ ] across the line from conceivable to plausible" (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955)). Thus the Court concludes that Little's claim that he "would be able" to tender the funds is sufficient to withstand BOA's motion to dismiss.

Finally, the Court cannot conclude that Plaintiff's admission that he is unaware of the precise amount he will be required to tender weighs in favor of Defendant's motion. In *Moore,* the Court found that Plaintiff's requests for a declaratory judgment as to the amount she would be required to tender, as well as for the Court to provide a reasonable time for Plaintiff to tender was directly at odds with Defendant's argument that Plaintiff did not intend to tender the funds in rescission. *Moore,* 597 F.Supp.2d at 617. Similarly, in this case, Little has also requested a declaratory judgment as to the amount he would be required to tender and that the Court use its equitable discretion to allow him a reasonable time to make tender. Compl. ¶¶ 34, 36. As in *Moore,* this fact weighs in favor of, rather than negates Plaintiff's claim that he is willing and able to tender the borrowed funds.

Furthermore, this case is readily distinguishable from *Hudson v. Bank of America,* upon which BOA relies, where the Court determined that it could not reasonably conclude that the Plaintiff could pay the as yet unknown amount due on the loan within a reasonable period of time. *Hudson,* 2010 WL 2365588, at *5. In *Hudson,* the Court considered the context surrounding the case, including the fact that the case had been pending for over a year and that Plaintiff claimed to be ignorant of the number of payments he had made on the mortgage, to determine that Plaintiff's ability to tender was merely speculative. *Id.* Unlike in *Hudson,* this case has not been pending for such a lengthy period of time, and it is not implausible that Little may be unaware of the exact amount he will be required to tender. Furthermore, though Little admits that he does not know the exact amount he will be required to tender, he has reasoned that the amount will be approximately $325,000, while the value of his home is approximately $354,000. Compl. ¶ 30. Thus, Little's allegations concerning the amount owed in TILA rescission are sufficient to render his claim that he will be able to tender plausible on the face of his complaint.

Having concluded that Plaintiff has adequately pled that he will be able to tender the borrowed funds in rescission, the Court finds that Plaintiff has stated a valid claim for TILA rescission against BOA based upon this ground. Accordingly, Defendant BOA's Motion to Dismiss for failure to plead the ability to tender is **DENIED.**

### E. Failure to State Claim for Attorney Fees Against an Assignee

Finally, BOA asserts that Plaintiff cannot state a claim for an award of attorney fees against BOA because he has not pled that the alleged TILA violations were apparent on the face of the disclosure agreement. Def.'s Mem. Supp. at 16–17. Specifically, BOA claims that Little's claims that (1) he did not receive notice of his right to rescind; (2) he did not receive a statement of his schedule of payment; and (3) Nationwide under-disclosed the finance charge are not violations that could have been apparent on the face of the disclosure statement. Def.'s Mem. Supp. at 17. Little appears to agree that statutory damages are only available against an assignee where the violations are apparent on the face of the disclosure agreement, but maintains that assignees are nevertheless subject to the right of rescission to the same extent as the original creditor. Pl.'s Mem. Opp'n at 19. In response to this assertion, BOA, for the first time, argues that the right to rescind can only be brought against an assignee where the TILA violations were apparent on the face of the disclosure statement. Def.'s Reply at 10.

■■■ TILA provides that "[e]xcept as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter ... which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). In turn, Section 1641(c) preserves the right of rescission by providing that "[a]ny consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation." § 1641(c). This Court recently interpreted these two statutory provisions and determined that while civil actions for damages under Sections 1640(a) and 1641(a) require that a TILA violation be apparent on the face of the disclosure statement, the right of rescission is not subject to this limitation and a plaintiff asserting a right of rescission against an assignee need not plead facts indicating that the alleged

TILA violation was apparent on the face of the disclosure statements. *See Carrington v. HSBC Bank USA, N.A.*, No. 2:10–CV–208, 760 F.Supp.2d 589, 2010 WL 5590761 (E.D.Va. Oct. 29, 2010); *see also Hudson*, 2010 WL 2365588, at *3 ("Where a TILA violation is 'evident on the face of the disclosure statement', an assignee may also be liable for damages under § 1640.... A borrower's right of rescission is unaffected by the assignment of the mortgage." (citations omitted)). Thus, to the extent to which BOA now asserts that Plaintiff cannot sustain his rescission claim because the violations alleged are not apparent on the face of the disclosure statement, BOA's Motion to Dismiss for failure to state a claim for rescission against an assignee is **DENIED.**

▮▮▮▮ Unlike a claim for rescission, a claim for attorney's fees pursuant to 15 U.S.C. § 1640(a)(3) is not a "distinct cause of action." *See Parker v. Potter*, 232 Fed. Appx. 861, 865 (11th Cir.2007). Thus, in order to state a claim for attorney's fees against an assignee, the plaintiff must allege TILA violations which are "apparent on the face of the disclosure statement." *See* 15 U.S.C. § 1641(a); *see also, e.g., Bills v. BNC Mortg., Inc.*, 502 F.Supp.2d 773, 776 (N.D.Ill.2007); *Brodo v. Bankers Trust Co.*, 847 F.Supp. 353, 359 (E.D.Pa. 1994). *But see, e.g., Fairbanks Capital Corp. v. Jenkins*, 225 F.Supp.2d 910, 917 (N.D.Ill.2002). An alleged TILA violation is considered to be "apparent on the face of the disclosure statement" where a disclosure "can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned;" or "does not use the terms required to be used by [TILA]." *Id.* "Thus, in considering a claim of assignee liability, the relevant inquiry is whether 'a reasonable person can spot [any violations] on the face of the disclosure statement or other assigned documents.'" *Irby–Greene v. M.O.R., Inc.*, 79 F.Supp.2d 630, 633–34

(E.D.Va.2000) (quoting *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 694 (7th Cir. 1998)). Because the Court has dismissed Little's alleged violations pertaining to the failure to disclose the payment schedule and under-disclosure of the finance charge, the Court will consider only whether Little's alleged violation for failure to provide notice of the right to rescind may be considered to be "apparent on the face" of the assigned documents.

▮▮▮ As discussed above, Little alleges that Nationwide failed to disclose the date on which the rescission period was set to expire on the document entitled "Notice of Right to Cancel." Accepting Plaintiff's factual allegation as true, such a failure would be apparent on the face of the disclosure agreement. *See, e.g., Ozuna v. Home Capital Funding*, No. 08–CV–2367, 2009 WL 2496804, at *3 (S.D.Cal. Aug. 13, 2009) ("Plaintiff alleges the closing documents failed to ... clearly disclose Plaintiff's right to rescind ... The failure to include these required disclosures would be apparent on the face of the disclosure statement."). Assuming, without deciding, that BOA was the assignee of the loan and was assigned the "Notice of Right to Cancel," BOA could have readily deduced from the face of the document that the space where the lender was to write the date of the rescission deadline had been left blank. *See Irby–Greene*, 79 F.Supp.2d at 633 ("An assignee's sole duty under TILA is to examine the assigned documents for any irregularities or illegalities...."). Thus, Little may assert a cause of action for attorney's fees based upon this alleged TILA violation. Accordingly, Defendant BOA's Motion to Dismiss for failure to state a claim for attorney's fees against an assignee is **DENIED** with respect to the alleged violation for failure to adequately disclose the right to rescind.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss Plaintiff's Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) is **GRANTED** in part and **DENIED** in part. Plaintiff's theory of liability based upon a failure to properly disclose the right to rescind is sustained, while Plaintiff's theories of liability pertaining to failure to disclose the payment schedule and under-disclosure of the finance charge are **DISMISSED.** However, Plaintiff is granted leave to amend paragraph 23A of his Complaint in accordance with this Opinion.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED.**